86 F.3d 1499
 96 Cal. Daily Op. Serv. 4339, 96 Daily Journal
D.A.R. 6729
UNITED STATES of America, et al.; Muckleshoot Tribe;
Nooksack; Upper Skagit; Squaxin Island; Lummi Indian
Tribe; Makah Tribe; Swinomish Indian Tribal Community;
Tulalip Tribe; Puyallup Tribe; Quileute Indian Tribe;
Suquamish Tribe; Hoh Indian Tribe; Quinault Indian Nation;
Confederated Tribes & Bands of the Yakima Indian Nation;
Nisqually Indian Tribe, Plaintiffs-Appellees,
v.
STATE OF WASHINGTON, et al., Defendants,
and
Washington Harvest Divers Association; Tom McMahon,
Intervenors-Appellants.
UNITED STATES of America, et al.; Muckleshoot Tribe;
Nooksack; Upper Skagit; Squaxin Island; Lummi Indian
Tribe; Makah Tribe; Swinomish Indian Tribal Community;
Tulalip Tribe; Puyallup Tribe; Quileute Indian Tribe; Hoh
Indian Tribe; Suquamish Tribe; Quinault Indian Nation;
Confederated Tribes & Bands of the Yakima Indian Nation;
Nisqually Indian Tribe, Plaintiffs-Appellees,
v.
STATE OF WASHINGTON, et al., Defendants,
and
Inner Sound Crab Association; Edward Knudson; Washington
Dungeness Crab Fishermen's Association; Ernest
Summers, Intervenors-Appellants.
 Nos. 95-35442, 95-35446.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 14, 1995.
Decided June 12, 1996.
 
 J. Lawrence Coniff, Olympia, Washington; Tom D. Tobin, Winner, South Dakota; Daniel W. Wyckoff, Olympia, Washington, for intervenors-appellants.
 Daniel Alan Raas, Raas, Johnsen & Stuen, Bellingham, Washington; John B. Arum, Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, Washington, Phillip E. Katzen and Allen H. Sanders, Columbia Legal Services Native American Project, Seattle, Washington, for plaintiffs-appellees.
 Jay D. Geck, Deputy Attorney General, Olympia, Washington, for defendants.
 Appeals from the United States District Court for the Western District of Washington, Edward J. Rafeedie, District Judge, Presiding. D.C. No. CV-89-00003-ER.
 Before: BOOCHEVER, FERNANDEZ, and KLEINFELD, Circuit Judges.
 Opinion by Judge BOOCHEVER; Dissent by Judge KLEINFELD.
 BOOCHEVER, Circuit Judge:
 
 
 1
 Three commercial fishing associations appeal the district court's order denying intervention in an action brought by the United States, as trustee for various Indian tribes, against the State of Washington. The United States and the tribes claimed fishing rights to shellfish. We affirm the district court's ruling that the motions to intervene were untimely.
 
 FACTS
 
 2
 In 1970, the United States, on its own behalf and as trustee for various Washington State (or "State") Indian tribes, brought an action against the State to enforce fishing rights reserved by the tribes in a series of treaties signed in the 1850s and negotiated by Isaac Stevens, the first Governor and first Superintendent of Indian Affairs of the Washington Territory (the "Stevens treaties"). See Washington v. Washington State Comm'l Passenger Fishing Vessel Ass'n, 443 U.S. 658, 666-69, 674-679, 99 S.Ct. 3055, 3064-66, 3068-71, 61 L.Ed.2d 823, modified, 444 U.S. 816, 100 S.Ct. 34, 62 L.Ed.2d 24 (1979) ("Passenger Fishing Vessel "). The district court eventually granted the tribes off-reservation fishing rights for salmon and steelhead, allowing state regulation of those rights for conservation purposes only. United States v. Washington, 384 F.Supp. 312 (W.D.Wash.1974), aff'd, 520 F.2d 676 (9th Cir.1975), cert. denied, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976). Those Indian tribes fishing under treaty rights could take up to fifty percent of the harvestable fish. Id. at 343. The district court retained continuing jurisdiction over unresolved treaty issues, authorizing the parties to file a "Request for Determination" of any issue concerning the subject matter of the case. Id. at 347. This court and the Supreme Court affirmed in substantial part. United States v. Washington, 520 F.2d 676 (9th Cir.1975), cert. denied, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); Passenger Fishing Vessel, 443 U.S. 658, 99 S.Ct. 3055.
 
 
 3
 Almost twenty years after the filing of the initial litigation, in 1989 the United States and sixteen Indian tribes ("Tribes") began a "subproceeding" by filing a Request for Determination and Declaratory and Injunctive Relief, seeking a declaration that their treaty right to take off-reservation fish extended to all species of shellfish found within their traditional fishing grounds. The State filed a response denying the Tribes' right to shellfish. The district court allowed intervention by several commercial shellfish growers and two private waterfront owners.
 
 
 4
 In September 1991, the Inner Sound Crab Association ("Inner Sound"), a group of non-Indian commercial dungeness crab fishers in Puget Sound, moved to intervene, arguing that the State would not vigorously defend Inner Sound's interests. At a pretrial conference on January 27, 1993, the district court denied the motion, instead giving Inner Sound amicus status and a right to receive and comment on all filings in the case. Inner Sound did not appeal.
 
 
 5
 In September 1993, the district court granted partial summary judgment for the Tribes, ruling that the treaty right to take "fish" includes the right to take shellfish. In January 1994, the court denied a motion for summary judgment by the State of Washington, ruling that the right to take shellfish included the right to harvest shellfish within a tribe's usual and accustomed fishing areas at any depth. After trial, the district court issued a memorandum opinion in December 1994 reaffirming its rulings that shellfish were fish, and that the Tribes could harvest in deep water. The decision divided the shellfish equally between treaty and non-treaty harvesters, and invited the parties to negotiate an implementation plan. United States v. Washington, 873 F.Supp. 1422, 1430-31, 1445-46 (W.D.Wash.1994). The decision deferred the issue of injunctive relief or any plan of implementation until the court received input from the parties. Id. at 1450.
 
 
 6
 Three months after the memorandum opinion, in March 1995, the Washington Harvest Divers Association ("Harvest Divers"), an association of commercial harvesters of sea urchins and sea cucumbers (both considered shellfish), moved to intervene. Also, Inner Sound again moved to intervene, this time by a joint motion with the Washington Dungeness Crab Fisherman's Association ("Dungeness Crab"), an association of active commercial dungeness crab fishers off the coast of Washington. In April 1995, the district court denied both motions and denied amicus status to the applicants for intervention.
 
 
 7
 On August 25, 1995, the district court entered an order directing the entry of final judgment consistent with the December 20, 1994, memorandum decision.
 
 
 8
 The three commercial fishers associations (collectively the "Associations") appeal the denial of their motions to intervene.DISCUSSION
 
 I. Motions to intervene as of right
 
 9
 This court reviews de novo the denial of a motion to intervene as of right. Sierra Club v. EPA, 995 F.2d 1478, 1481 (9th Cir.1993). The district court's determination of one part of the test for intervention, timeliness, is reviewed for an abuse of discretion. Id.; Yniguez v. Arizona, 939 F.2d 727, 730-31 (9th Cir.1991).
 
 
 10
 Rule 24 of the Federal Rules of Civil Procedure provides:
 
 
 11
 Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 12
 Fed.R.Civ.P. 24(a)(2). The district court must grant the motion to intervene if four criteria are met: timeliness, an interest relating to the subject of the litigation, practical impairment of an interest of the party seeking intervention if intervention is not granted, and inadequate representation by the parties to the action. Greene v. United States, 996 F.2d 973, 976 (9th Cir.1993). Rule 24(a) is construed broadly in favor of intervention. Id.
 
 
 13
 Because the Associations do not all make the same arguments regarding their motions to intervene, we address each Association separately.
 
 A. Harvest Divers
 
 14
 This court evaluates three factors to determine whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." United States ex rel. McGough v. Covington Technologies Co., 967 F.2d 1391, 1394 (9th Cir.1992) (quotations omitted). Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation. Officers for Justice v. Civil Serv. Comm'n of San Francisco, 934 F.2d 1092, 1095 (9th Cir.1991). Although the length of the delay is not determinative, any substantial lapse of time weighs heavily against intervention. Id. If the court finds that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24. United States v. Oregon, 913 F.2d 576, 588 (9th Cir.1990), cert. denied, 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991).
 
 
 15
 In April 1995, the district court found that the motions were untimely, stating:
 
 
 16
 Here, the proceeding is at a stage of final implementation. The impact to the movants has been foreseeable since at least 1989, when this sub-proceeding was filed. The proceeding has advanced to a late stage, a stage too late for intervention. In addition, the other parties would be prejudiced by the intervention of these groups. Permitting the movants to enter this litigation would unnecessarily prolong and complicate resolution of the issues at stake. Indeed, the movants really appear to have their own agenda, namely they contest the way that the state manages the NON-tribal 50% [of shellfish], and, in the case of [the parties on appeal], they contest the Indians having a share at all. Therefore, the groups seek redress of an issue not before the Court, and they additionally seek to relitigate an issue that the Court already decided. If they were permitted to intervene and attempted to raise these issues, they would prolong and complicate the case, to the detriment of those parties that have been part of the litigation from the outset.
 
 
 17
 Finally, no group has stated a satisfactory reason for its delay in attempting to intervene.
 
 1. Stage of proceeding
 
 18
 Harvest Divers moved to intervene three months after the district court issued its memorandum opinion. Harvest Divers argues that it should have been allowed to intervene at that late date because Washington State became "openly antagonistic" toward Harvest Divers only after the memorandum opinion was issued in December 1994, and that the delay in filing should be measured from this date. The recent "open antagonism" Harvest Divers cites, however, simply reflected Washington State's efforts to implement the trial court's memorandum opinion.
 
 
 19
 Harvest Divers' own documents also indicate that it believed that Washington State was hostile to its interests since long before the final decision. For example, Harvest Divers states that it was afforded no opportunity to participate in Washington State's preparation for trial or the trial itself; that Washington State has followed a "pro-Indian" policy "by a continuous course of conduct," and rebuffed all Harvest Divers' efforts to communicate with its agencies before and after the district court's decision; and that throughout the litigation, "[t]he policies adopted by the State are to seek accommodation with Indians and use all possible means to achieve that goal. Essentially the State has conceded most of the Tribes' case by its actions prior to issuance of Judge Rafeedie's memorandum opinion." Further, in his declaration supporting the motion to intervene in the district court, Harvest Divers President Tom McMahon stated "We have absolutely no confidence in [the State] to represent our interests. In fact, I believe that their interests oppose ours based on their actions this past two years."
 
 
 20
 Moreover, the issues identified by Harvest Divers are basic to many of the issues decided long before the final decision in the district court. Among other arguments, Harvest Divers contends that the Stevens treaties could not preserve to the Tribes any rights at all in shellfish, and that the treaties could not recognize any Indian authority to regulate the gathering of shellfish by tribal members in off-reservation waters. These issues go to the heart of the case and the interpretation of the Stevens treaties. The period of final implementation is too late a stage of the proceeding to permit intervention to relitigate such basic questions. See Oregon, 913 F.2d at 588 (courts allowing intervention after the entry of consent decrees generally have specified that no previously litigated issues may be reopened).
 
 2. Prejudice to other parties
 
 21
 The district court found that the other parties would be prejudiced by the requested intervention, because intervention would complicate the issues and prolong the litigation. This was not an abuse of discretion. The Harvest Divers' arguments challenge the very foundation for any allocation of shellfish rights to the Tribes, by questioning whether the Stevens treaties reserved any rights at all to the Tribes. Intervention on the grounds urged by Harvest Divers would upset the delicate balance achieved by the district court after six years of litigation. See id. at 589 (prejudicial to upset a delicate compromise achieved after years of litigation).
 
 3. Reason for and length of delay
 
 22
 The district court found that none of the Associations had stated a satisfactory reason for its delay. On appeal, Harvest Divers argues that it did not move to intervene earlier because the district court denied Inner Sound's 1993 motion to intervene, and that Harvest Divers filed its motion only when "the full import of the State's political maneuvering became apparent." Yet Harvest Divers should not have let the fate of Inner Sound's motion to intervene govern Harvest Divers' decision whether to apply for intervention, because its arguments were not identical to those of Inner Sound. Further, even if Harvest Divers believed that Inner Sound's arguments adequately represented the interests of Harvest Divers, Harvest Divers could have readily ascertained that Inner Sound did not intend to appeal the denial of its first motion, and therefore should have sought intervention to protect that right to appeal. Moreover, Harvest Divers claims that the State persistently refused to communicate with it about the issues before the court, maintaining that Washington State followed a "pro-Indian" policy and opposed Harvest Divers' interests throughout.
 
 
 23
 Assuming that these allegations are true, the association was on notice that it might need to intervene to protect its interests. See Oregon, 913 F.2d at 589 (inquiries and attempts to participate in litigation show awareness that risk exists). The district court's denial of the earlier motion by a different association thus does not sufficiently explain Harvest Divers' failure to present its own reasons for intervention.
 
 
 24
 Because Harvest Divers did not file a motion to intervene until after the district court issued its decision in this case, the other parties would be prejudiced by the requested intervention, and Harvest Divers did not present satisfactory reasons for its substantial delay in filing the motion to intervene, it was not an abuse of discretion for the district court to find that Harvest Divers' motion to intervene was not timely. We therefore do not reach the remaining elements of Rule 24.
 
 B. Inner Sound
 
 25
 Because Inner Sound appeals from a motion to intervene filed on the same date as Harvest Divers, at first glance it seems the same timeliness analysis should be applied on appeal. Inner Sound, however, seeks a more lenient analysis on two grounds.
 
 
 26
 The earlier motion. Inner Sound first moved for intervention on September 26, 1991, and the district court denied the motion on January 27, 1993. Inner Sound was granted amicus status and the right to receive and comment on all pleadings. Inner Sound did not appeal this decision, and the earlier motion to intervene is not before us.
 
 
 27
 Inner Sound attempts, however, to rely on its earlier motion in arguing that its later motion was timely. It seeks to excuse its decision not to appeal the denial of the first motion by stating that it relied on the district court's assurance that it could again file for intervention. We reject Inner Sound's attempt to resurrect an earlier, unappealed (and presumably timely) failed motion to intervene, in order to support its argument that a much later motion, filed after the court had reached a decision on the merits, was improperly denied.
 
 
 28
 Limited intervention. In the district court, Inner Sound's second motion to intervene stated that it sought intervention
 
 
 29
 for the limited purpose of participating in the negotiation and formation of those provisions of the Court's implementation plan ... and any and all proceedings related to the Implementation Plan .... to participate in negotiation meetings concerning the management and harvest of the dungeness crab resource ... [and] to present argument to the court concerning the implementation plans and to have the right to appeal any final court order concerning such dungeness crab management issues. Finally, applicants seek to appear at any and all proceedings held under this Court's continuing jurisdiction relating to implementation of the Court's memorandum opinion and order dated December 20, 1994.
 
 
 30
 On appeal, Inner Sound states that it seeks to intervene "to participate in this appeal and future subproceedings, as necessary." Inner Sound argues that the standards for "limited intervention" for the purpose of appeal should apply. A motion to intervene seeking only to participate in the appeal is timely if filed within the time allowed for filing an appeal. McGough, 967 F.2d at 1395.
 
 
 31
 We decline to apply the timeliness analysis that would apply to an intervention limited to appeal. First, it is disingenuous of Inner Sound to claim that it seeks "limited intervention" when it asked for far more in the district court and, even on appeal, seeks to participate in "future subproceedings" and to "have a voice in the implementation plan," complaining that it and the other Associations "never had their day in the district court." Second, at the time Inner Sound filed its motion to intervene, there had been no final judgment in the overall proceeding from which an appeal could be taken. Intervention for the purpose of appeal was thus premature. Third, Inner Sound had no indication that the State would not appeal from a final judgment. Washington State had made "repeated assurances" that it would appeal, and we take judicial notice that the State recently did file an appeal after its motion for reconsideration was denied. United States v. State of Washington, No. 96-35014 (9th Cir. filed Jan. 8, 1996).
 
 
 32
 We therefore do not address the motion as one for limited intervention, as it was not filed on that basis in the district court, nor does it appear to be so limited on appeal. We instead apply the traditional test of timeliness to Inner Sound's motion to intervene.
 
 1. Stage of proceeding
 
 33
 The appropriate analysis is the same as that applied to Harvest Divers, and the result is the same. This stage of the proceeding is too late for this motion to intervene.
 
 
 34
 Inner Sound had reason to believe that the State's representation was inimical to the association's interests in 1991. Inner Sound submitted a declaration from its president in the district court stating that "I have experienced great frustration in communicating with the [state] Department of Fish and Wildlife ... during the past year, we have not had the courtesy of being afforded direct communication." It also attached a declaration from the earlier motion to intervene in September 1991, which stated that Inner Sound sued the State in 1988 over its "sporadic" enforcement against Tribal fishers and because "the State cannot adequately represent the interests of the Inner Sound Crab Association." Inner Sound cannot now claim, on the ground that it had only recently realized its interests were in jeopardy, that a motion to intervene filed as late as 1995 was timely.
 
 2. Prejudice to other parties
 
 35
 Although Inner Sound purports not to relitigate issues already decided, it complains that there has been "no historical evidence of tribal participation in the coastal crab fishery ... [which] extend[s] for miles into the Pacific Ocean." If Inner Sound were allowed to intervene to relitigate this issue, Inner Sound would certainly upset the "delicate balance" achieved by the district court and prejudice the parties by further delay and briefing. See Oregon, 913 F.2d at 589.
 
 3. Reason for and length of delay
 
 36
 Inner Sound argues that one reason for its late motion was the State's emergency closure of the crab fishery in February 1995, implying that the "premature" closure prompted its motion to intervene one month later. A failure to realize that one's interests are in jeopardy until very late in the proceedings may make a late motion to intervene "timely." See Yniguez, 939 F.2d at 735. The closure of the crab fishery, however, was not Inner Sound's first indication that its interests were threatened. Inner Sound knew that its deep-water fishery was to be shared with the Tribes as early as January 1994, when the district court ruled that the Tribes could harvest any species of shellfish at any depth. That was fourteen months before Inner Sound filed its motion to intervene.
 
 
 37
 For the reasons stated above, it was not an abuse of discretion for the district court to find that Inner Sound's motion to intervene was not timely. We therefore need not reach the remaining elements of Rule 24 intervention.
 
 C. Dungeness Crab
 
 38
 Dungeness Crab filed for intervention with Inner Sound in 1995, and shares Inner Sound's brief on appeal, although unlike Inner Sound it did not file to intervene earlier in the lawsuit. We hold that Dungeness Crab's motion was properly denied as untimely for the same reasons as was Inner Sound's, under traditional intervention analysis.
 
 II. Permissive intervention
 
 39
 The district court also denied the Associations' requests for permissive intervention under Federal Rule of Civil Procedure 24, which provides that a court may permit intervention pursuant to a timely motion
 
 
 40
 when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
 
 
 41
 Fed.R.Civ.Pro. 24(b)(2). Permissive intervention requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 473 (9th Cir.), cert. denied, 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992). This court reviews a denial of permissive intervention for an abuse of discretion. Id. at 472.
 
 
 42
 The district court found that "as shown above, the movant's motions are not timely, and intervention would cause prejudice to the other parties." A finding of untimeliness defeats a motion for permissive intervention. Oregon, 913 F.2d at 589. Because we hold that the district court did not abuse its discretion in finding that the motions to intervene were untimely, we affirm the district court's refusal to exercise its discretion to allow permissive intervention.
 
 CONCLUSION
 
 43
 We affirm the denial of the motions to intervene.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 44
 I respectfully dissent.
 
 
 45
 With respect to timeliness, two aspects of this case justify the prospective intervenors' delay. First, they do not seek to relitigate what the court decided prior to the motions to intervene. Though they do not agree with the court's decisions, their motions ask leave to intervene only with respect to the implementation plans to be prepared subsequently, and a subsequent appeal.
 
 
 46
 The majority opinion misconstrues the intervenors' position as an attempt to relitigate what has already been decided. The parties seeking intervention do not agree that sea cucumbers etc. are fish covered by the treaty, but they say expressly in their motion to intervene that they do not propose to relitigate it in the district court:
 
 
 47
 Inner Sound ... move[s] ... for intervention in this action for the limited purpose of participating in the negotiation and formation of those provisions of the Court's implementation plan pursuant to the Court's memorandum opinion and order dated December 20, 1994 and any and all proceedings related to the Implementation Plan or implementation of this Court's decision of December 20, 1994. Applicants for intervention do not seek to relitigate previously decided issues, to reopen evidentiary issues, or to conduct discovery unrelated to their requested participation herein.
 
 
 48
 Harvest Divers likewise limit their motion to intervene. Their motion says they "accept the record in this proceeding as it is made to date," but they want to protect their right to appeal the sea urchin and sea cucumber ruling now that the Washington Attorney General has withdrawn from its previous opposition to it, and want to be allowed to participate in the negotiations regarding implementation of the district court's implementation plan.
 
 
 49
 As the majority opinion concedes, the general rule disfavoring post-judgment motions to intervene does not apply if the motion seeks only to participate in the appeal. United States ex rel. McGough v. Covington Technologies, 967 F.2d 1391, 1395 (9th Cir.1992); Yniguez v. State of Arizona, 939 F.2d 727, 734 (9th Cir.1991). That exception applies here precisely, insofar as what they intervenors seek is the ability to participate in an appeal. It applies by analogy, insofar as the intervenors seek only to participate in the implementation negotiations following the court's decision on the substantive issue of whether the crabs, sea urchins and sea cucumbers are fish covered by the treaty.
 
 
 50
 Second, the rule disfavoring post-judgment litigation had no application when the motions to intervene were denied, because this case had not gone to final judgment. As the majority opinion concedes, the motions to intervene were filed in March and denied in April, and the court directed that final judgment be entered in accord with its decision in August. Actually, final judgment is probably a misnomer even at that later time. There has been a final decision by the district court on an issue, but nothing to suggest that the litigation has reached an end. This litigation began in 1970. It has gone on for 2 1/2 decades, and promises to go on indefinitely into the future, as the district court protects treaty rights to the fish in the circumstances arising from time to time. This is not like a traditional suit at equity, such as a suit for specific performance of a contract to convey real estate. In that kind of lawsuit, the final judgment enjoins the defendant to execute a conveyance, he does, and the case is over. This case will not be over. The opinion purporting to be the decision on which final judgment was issued says that "because the Court desires to have the benefit of the parties' prior experience in Washington I, the Court defers the issue of injunctive relief or any plan of implementation until there has been input from the parties." United States v. State of Washington, 873 F.Supp. 1422, 1450 (W.D.Wash.1994). It does not purport to end the district court's control of the industry, end the process of adjudicating Indian treaty rights regarding the industry, or to be the injunction sought under Federal Rule of Civil Procedure 65(d). The district court determination that it needed "input from the parties" before issuing an injunction shows that what had been issued was not the final judgment.
 
 
 51
 In practical effect, the United States District Court regulates the Puget Sound fishery to protect treaty rights, has done so for twenty-five years, and there is no reason to doubt that it will do so for another twenty-five years. Where a district court controls an industry for decades or indefinitely, the length of the lawsuit makes it inequitable to exclude late participants in the manner which would be appropriate for a traditional suit at equity. See Textile Workers Union v. Allendale Co., 226 F.2d 765, 767 (D.C.Cir.1955) ("Obviously tailored to fit ordinary civil litigation, these provisions require other than literal application in atypical cases").
 
 
 52
 In twenty-five years, the sea changes, in terms of what creatures are scarce or plentiful in Puget Sound, the technology changes, in terms of how practical it is to fish for one or another creature, and the market changes, in terms of how interested Japanese or American consumers may be in the catch. The eleven-year old child of a halibut fisherman when this lawsuit started in 1970 may now be the thirty-six year old skipper of a crab boat, with a different kind of participation in the industry and different economic interests than his father's. Where a federal district court makes itself a permanent regulatory agency for an industry, it ill behooves the judiciary to exclude people who earn their living in the industry from being heard on how they shall be regulated, on the ground that they did not complain about other decisions at an earlier time.
 
 
 53
 As for prejudice to other parties by prolonging the litigation, there is no such thing as prolongation of something which has no end. Nor should we be concerned with preserving a delicate compromise the parties may work out, if other parties with important, unrepresented interests are excluded. A compromise between A and B in which they decide to take C's fish does not deserve protection.
 
 
 54
 As for reasons for delay, there are two reasons why this factor should not cut against the intervenors. One is that the reasons were adequate. Intervention would not have been necessary had the state won a substantive decision that the sea creatures were not covered by the treaty, and Harvest Divers would not have needed to intervene if Inner Sound had succeeded. Second, intervention in a huge suit at equity is very expensive. Someone must pay the lawyers. Parties with economic interests necessarily must weigh the huge litigation expense against the risk, and postpone bearing the expense as long as possible. We should not add to the risks and increase the penalties for late intervention, in a long-term regulatory equitable proceeding such as this one. That would cause numerous parties to intervene earlier, wasting their money and the court's time. The prospective intervenors' practical decision to let the Washington Attorney General do the work so long as she was on their side saved themselves and their adversaries money, and saved the court as well as the parties a great deal of needless effort. That is praiseworthy, not punishable.
 
 
 55
 The would-be intervenors have "an interest relating to the property of the transaction which is the subject of the action" and are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest." That is the standard for mandatory intervention under Federal Rule of Civil Procedure 24(a). The intervenors' interest is protected by the treaty, by the same words as the Indian tribes' interest. The words of the Indian treaty, which is the basis for the claims asserted in this action, protect "all citizens," not just the Indian tribes:
 
 
 56
 The right of taking fish, at all usual and accustomed ground and stations, is further secured to said Indians, in common with all citizens of the Territory, and of erecting temporary houses for the purpose of curing, together with the privilege of hunting, gathering roots and berries, and pasturing their horses on open and unclaimed lands: Provided, however, That they shall not take shell fish from any beds staked or cultivated by citizens.
 
 
 57
 Art. III of the Treaty of Medicine Creek, 10 Stat. 1133 (as quoted in Washington v. Washington State Commercial Passenger Fishing Vessel Association (Fishing Vessel ), 443 U.S. 658, 674, 99 S.Ct. 3055, 3069, 61 L.Ed.2d 823 (1979) (emphasis added)).
 
 
 58
 The Supreme Court has already construed these words to create a treaty right to fish for non-Indian fishermen as well as Indian fishermen. "Both sides have a right, secured by treaty, to take a fair share of available fish." Id. at 684-85, 99 S.Ct. at 3074 (emphasis added). That means that the non-Indian fishermen have a "right, secured by treaty." It may be that the State of Washington adequately represented the interests of the would-be intervenors prior to the decision on the substantive issue of whether the sea cucumbers, etc., are fish covered by the treaty. If so, then the would-be intervenors were, prior to that decision, "adequately represented by existing parties," so they were not entitled to intervention. Fed.R.Civ.P. 24(a). But once the state changed its position, then the would-be intervenors' interests were no longer "adequately represented by existing parties." That entitled them to intervene as of right.
 
 
 59
 Rule 24 is traditionally construed liberally in favor of intervention. See, e.g., Washington State Bldg. & Constr. Trades Council, AFL-CIO v. Spellman, 684 F.2d 627 (9th Cir.1982). Where there is "a relationship between the legally protected interests and the claims at issue," that is generally enough for intervention. Sierra Club v. EPA, 995 F.2d 1478, 1484 (9th Cir.1993). The intervenors' claims in this case relate to their legally-protected interests under the treaty to share the fish in common with the Indian tribes. Reliance before the substantive decision on the state was a reasonable justification for delaying the motion to intervene until afterward, as we held in Yniguez v. State of Arizona, 939 F.2d 727.
 
 
 60
 The district court regulates the industry in which the proposed intervenors earn their livelihoods. They should be allowed to sit at the table where the compromises are made which will determine whether they can continue to earn an honest living in that industry.