131 F.3d 1297
 39 Fed.R.Serv.3d 1336, 97 Cal. Daily Op. Serv. 9311,
97 Daily Journal D.A.R. 15,021
 LEAGUE OF UNITED LATIN AMERICAN CITIZENS; Xavier Becerra,
Congressman; Richard Polanco, Assemblyman; Mike Hernandez;
Los Angeles City Councilman; Yvonne Braithwaite-Burke, Los
Angeles County Supervisor; Victoria Castro, Los Angeles
City Board of Education Member; Jeff Horten, Los Angeles
City Board of Education Member; Jackie Goldberg, Los
Angeles City Councilwoman; Edward Fortez, Pomona Mayor;
G.I. Forum; Mexican-American Political Association;
One-Stop Immigration; Fermandad Mexicana Nacional; United
Californian Mexican-American Association; La Alianza; Casa
De Alfarero; Jovenes, Inc.; Chicano Federation of San
Diego, Inc.; Jorge Alberto Hernandez and Alanca Nayeli
Hernandez, through their next-friend, Ignacio Hernandez;
Carlos Alejandro and Carla Elena Burgos, through their
next-friend, James Newton Jordan, III; Pablo
Montes-Morales, Luis Iejia-Deras, and Jose Luis Ramirez,
through their next-friend, Felipe Y. Fuentes, III; Gregorio
T., Plaintiffs-Appellees,
v.
Pete WILSON, Governor of the State of California;
California State Board of Education; Maureen Dimarco,
California Superintendent of Public Instruction; William D.
Dawson, Acting California Superintendent of Public
Instruction; Orange Unified School District; Tustin
Unified School District; San Diego Unified School District;
Eloise Anderson, Director, California Department of Social
Services; Kimberly Belshe, Director, California Department
of Health; Dan Lungren, Attorney General of California,
Defendants-Appellees,
Alan C. Nelson Foundation of Americans for Responsible
Immigration, a California Corporation, Applicant
for Intervention-Appellant.
 No. 97-55388.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 8, 1997.
Decided Dec. 12, 1997.
 
 Sharon L. Browne, Mark T. Gallagher, Pacific Legal Foundation, Sacramento, CA, for intervenor/appellant The Alan C. Nelson Foundation of Americans for Responsible Immigration.
 Peter A. Schey, Carlos Holguin, Miranda D. Junowicz, Center for Human Rights and Constitutional Law, Los Angeles, CA, for plaintiff/appellee League of United Latin American Citizens.
 Mark Rosenbaum, Peter Eliasberg, ACLU Foundation of Southern California, Los Angeles, CA; Thomas A. Saenz, Mexican American Legal Defense and Educational Fund, Los Angeles, CA, for plaintiff/appellee Gregorio T.
 Daniel E. Lungren, Attorney General; Charlton G. Holland, III, Senior Assistant Attorney General; Donald P. Cole, Deputy Attorney General, San Francisco, CA, for defendants/appellees Pete Wilson, Governor, et al.
 Appeal from the United States District Court for the Central District of California; Mariana R. Pfaelzer, District Judge, Presiding. D.C. Nos. 94-7569 MRP, 94-7570 MRP, 94-7571 MRP, 94-7652 MRP, 94-0187 MRP.
 Before O'SCANNLAIN, FERNANDEZ, and THOMAS, Circuit Judges.
 O'SCANNLAIN, Circuit Judge.
 
 
 1
 We must decide whether an applicant for intervention seeking to participate in the trial litigation surrounding California's Proposition 187 may do so.
 
 
 2
 * On November 8, 1994, the California electorate enacted Proposition 187 by a 59% to 41% margin. In passing Proposition 187, the People of California "found and declared that they had suffered ... economic hardship caused by the presence of illegal aliens in th[e] state" and that they had "suffered ... personal injury and damage by the criminal conduct of illegal aliens in th[e] state." Californians thus "declare[d] their intention to provide for cooperation between their agencies of state and local government with the federal government, and to establish a system of required notification by and between such agencies to prevent illegal aliens in the United States from receiving benefits or public services in the State of California." The various substantive sections of Proposition 187 reflect that intention: sections 2 and 3 criminalize the manufacture, distribution, sale, and use of false citizenship or resident alien documents; sections 4 and 9 mandate the full cooperation of both State law enforcement agencies and the State Attorney General's office with the federal Immigration and Naturalization Service in apprehending aliens illegally residing in California; sections 5 and 6 preclude illegal aliens from receiving public social services or publicly funded health care; and sections 7 and 8 exclude illegal aliens from public elementary, secondary, and post-secondary schools in the State.
 
 
 3
 Shortly after the initiative passed, a number of actions challenging the constitutionality of Proposition 187 were filed in state and federal courts. The five suits filed in federal court were consolidated in the United States District Court for the Central District of California. See League of United Latin American Citizens v. Wilson, 908 F.Supp. 755, 763 (C.D.Cal.1995). On November 16, 1994, the district court entered a temporary restraining order enjoining implementation of sections 4, 5, 6, 7, and 9 of the initiative and, on December 14, 1994, it issued a preliminary injunction preventing the enforcement of those same sections. See id. at 764.
 
 
 4
 During the early stages of the litigation, the district court permitted four additional sets of parties to intervene as plaintiffs pursuant to Federal Rule of Civil Procedure 24: (1) the City of Los Angeles; (2) the California Association of Catholic Hospitals and the Catholic Health Association of the United States; (3) the California Teachers Association, California Faculty Association, American Federation of State, County and Municipal Employees AFL-CIO, and Service Employees International Union AFL-CIO; and (4) the Islamic Center of Southern California, Muslim Public Affairs Council of Churches. See id. at 763 n. 2.
 
 
 5
 On May 1, 1995, plaintiffs brought motions for summary judgment, claiming that Proposition 187 is preempted by the federal government's exclusive authority over the regulation of immigration issues, see U.S. Const. art. I, § 8, cl. 3, and is thus invalid under the Supremacy Clause, U.S. Const. art. VI, § 2. In a published opinion filed November 20, 1995, the district court granted in part and denied in part the plaintiffs' motion. See League of United Latin American Citizens, 908 F.Supp. at 786-87. Because its decision did not finally resolve all issues presented in the case, the district court announced that the preliminary injunction issued on December 14, 1994 would remain in effect pending further order of the court. See id. at 787. Defendants subsequently filed a motion for reconsideration of the district court's November 20 decision and a motion for partial summary judgment as to two of the sections left intact by that decision.
 
 
 6
 On February 4, 1997, approximately twenty-seven months after the suits were originally filed and at least eighteen months after the four other groups had successfully intervened, The Alan C. Nelson Foundation of Americans for Responsible Immigration ("ACNFARI") filed a motion to intervene in the litigation as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, by permission of the court pursuant to Federal Rule of Civil Procedure 24(b)(2). In ACNFARI's memorandum in support of its motion, it explained that its members had participated in the drafting and sponsorship of Proposition 187 and that, as a result, ACNFARI had a "strong interest in the viability and constitutionality" of the initiative.
 
 
 7
 On February 10, 1997, the district court vacated ACNFARI's request for oral argument on the intervention issue, took the matter under submission, and denied the motion without elaboration: "Having considered the Motion and supporting papers, the Court denies the Motion." The district court entered the formal order denying ACNFARI's motion to intervene two days later, and this appeal followed.[1]II
 
 
 8
 The denial of a motion to intervene as of right pursuant to Rule 24(a)(2) is an appealable "final decision" within the meaning of 28 U.S.C. § 1291. See Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1491 n. 2 (9th Cir.1995).
 
 
 9
 We review a district court's denial of a motion to intervene as of right pursuant to Rule 24(a)(2) de novo. See United States v. Washington, 86 F.3d 1499, 1503 (9th Cir.1996). Generally, we review district courts' determinations of one of the elements of the intervention-as-of-right standard--timeliness--only for abuse of discretion. See id. However, because the district court below denied ACNFARI's intervention motion in a curt, one-sentence order without specifying whether or not its denial was premised upon a finding of untimeliness, we have no way of determining whether it abused its discretion with regard to that element; consequently, we must review the timeliness issue in this case de novo. See Sierra Club v. Espy, 18 F.3d 1202, 1205 n. 2 (5th Cir.1994) ("Although the timeliness of intervention is generally reviewed for abuse of discretion, where the district court makes no finding regarding timeliness, we review this factor de novo." (citations omitted)).
 
 III
 
 10
 In the absence of a statute conferring an unconditional right to intervene, Federal Rule of Civil Procedure 24(a)(2) governs a party's application for intervention as of right in the federal courts. Rule 24(a)(2) provides:
 
 
 11
 Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 12
 Fed.R.Civ.P. 24(a)(2).
 
 
 13
 Courts in this circuit have recognized that the requirements of Rule 24(a)(2) may be broken down into four elements, each of which must be demonstrated in order to provide a non-party with a right to intervene: (1) the application must be timely; (2) the applicant must have a "significantly protectable" interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court. See Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 836 (9th Cir.1996).
 
 
 14
 * Timeliness is "the threshold requirement" for intervention as of right. United States v. Oregon, 913 F.2d 576, 588 (9th Cir.1990). In other words, if we find "that the motion to intervene was not timely, [we] need not reach any of the remaining elements of Rule 24." Washington, 86 F.3d at 1503.
 
 
 15
 In determining whether a motion for intervention is timely, we consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." County of Orange v. Air California, 799 F.2d 535, 537 (9th Cir.1986). In considering these factors, however, we must bear in mind that "any substantial lapse of time weighs heavily against intervention." Washington, 86 F.3d at 1503. Because ACNFARI filed its motion a full twenty-seven months after the original actions challenging Proposition 187 were commenced, it fights an uphill battle in its effort to intervene.1
 
 
 16
 With regard to the "stage of proceeding" factor, ACNFARI stresses the fact that, at the time the district court denied its motion, this litigation was "in the pretrial stages" and, at least as of that time, "no trial date ha[d] been set for a final determination of Proposition 187's fate." (Appellant's Opening Brief, at 10; Appellant's Reply Brief, at 4-5).[2]
 
 
 17
 The simple fact that a trial had not yet commenced when ACNFARI moved to intervene, however, cannot be dispositive. To confer talismanic significance upon the beginning of trial would be to elevate form over substance. We believe, in contrast, that the timeliness inquiry demands a more nuanced, pragmatic approach. ACNFARI's emphasis on the pre-trial nature of the proceedings--that is, its focus on what had not yet occurred prior to its February 4, 1997 motion--ignores what had already occurred by that time. At the time ACNFARI sought to intervene, a lot of water had already passed underneath Proposition 187's litigation bridge. Obviously, the plaintiffs' complaints had been filed. The district court had issued a temporary restraining order, and subsequently a preliminary injunction, with regard to several sections of the Proposition. The defendants had appealed the district court's issuance of the preliminary injunction to the Ninth Circuit. At a relatively early stage of the litigation, four sets of parties had successfully intervened in the case. The court had provisionally certified a plaintiff class in accordance with Rule 23. The defendants had filed, and the district court had denied, a motion to dismiss. The defendants had filed an answer. The plaintiffs had filed a motion for summary judgment, on which the district court had heard argument, and which it had granted in part and denied in part. And finally, discovery had proceeded for roughly nine months before being suspended in December 1995.
 
 
 18
 Obviously, the situation presented to us today is not even remotely comparable to the situation presented in Northwest Forest Resource, 82 F.3d at 836-37, in which the court permitted the intervention of a non-party that moved to intervene less than a week after the original complaint was filed, before the defendants had answered, and before any substantive proceedings had taken place. In stark contrast, by the time ACNFARI got around to attempting to intervene, the district court and the original parties had covered a lot of legal ground together, and the mere fact that the first trial witness had not yet been sworn cannot, and does not, change that. We believe that the fact that the district court has substantively--and substantially--engaged the issues in this case weighs heavily against allowing intervention as of right under Rule 24(a)(2).
 
 2
 
 19
 With respect to the "prejudice" factor of the timeliness analysis, ACNFARI argues that "[g]iven the long hibernation period of this case, it is difficult to see how [its] intervention would prejudice any party to the action." (Appellant's Opening Brief, at 12). In response, Appellee Gregorio T. contends that "[b]ecause [ACNFARI] is requesting party status, rather than making its views known through participation as an amicus curiae, it must be contemplating discovery and filing motions--the only rights denied any amicus." Gregorio T. fears that "the most likely motions would be motions for reconsideration," which merely "consist of reargument of issues already briefed and argued by the parties and decided by the Court." (Appellee's Brief, at 10). In its reply brief, ACNFARI denies these charges, insisting that it "has no intention of trying to reopen or conduct discovery or reargue issues that have already been resolved by the District Court." (Appellant's Reply Brief, at 7).
 
 
 20
 The parties' conflicting views obviously move us no closer to deciding the issue of prejudice. Certainly neither appellee's speculation nor appellant's reassurance can be dispositive of the timeliness issue. We do note, however, that, as a general rule, intervenors are permitted to litigate fully once admitted to a suit. See generally Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7C Federal Practice and Procedure: Civil 2d § 1920, at 488-91 (1986). Consequently, even if ACNFARI does in fact limit itself, as it has promised, to filing motions and conducting discovery regarding future issues, its admission as a party will have the inevitable effect of prolonging the litigation to some degree. We recognize, of course, that additional delay is not alone decisive (otherwise every intervention motion would be denied out of hand because it carried with it, almost be definition, the prospect of prolonging the litigation). However, in a case like this one, in which the proposed intervenor waited twenty-seven months before seeking to interject itself into the case, only to move the court for full-party participation at a time when the litigation was, by all accounts, beginning to wind itself down, we believe that the additional delay caused by the intervenor's presence is indeed relevant to the timeliness calculus, and counsels against granting ACNFARI's motion.
 
 3
 
 21
 By its own admission, the real fly in ACNFARI's intervention ointment is the third timeliness factor: the length of and the reason for its delay. As we noted previously, "any substantial lapse of time weighs heavily against intervention." Washington, 86 F.3d at 1503. In the instant case, despite its admission that it has been "aware of this litigation since it was filed" (Appellant's Opening Brief, at 11-12), ACNFARI waited twenty-seven months after the plaintiffs filed their original complaints, and at least eighteen months after four other groups had successfully intervened in the case, to move the district court for intervention. ACNFARI's extreme delay, at the very least, undermines its assertion of a right to full-party status. See Wright, Miller & Kane, supra, § 1916, at 430 ("[C]ourts generally have been reluctant to allow intervention when the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene.").
 
 
 22
 Even more damaging to ACNFARI's motion than the twenty-seven month delay itself, however, is its failure adequately to explain--either in its original motion to the district court, in its opening or reply briefs to this court, or at oral argument--the reason for its delay. In fact, the only real explanation that ACNFARI offers for its lag is that "the stagnate nature of the case has convinced it that its interests may not be adequately represented " by the state defendants. (Appellant's Brief, at 12) (emphasis added).[3] Although ACNFARI correctly notes that the crucial date in assessing the timeliness of an intervention motion is the date that the applicant "should have been aware [its] 'interest[s] would no longer be protected adequately by the parties,' " Officers for Justice v. Civil Serv. Comm'n, 934 F.2d 1092, 1095 (9th Cir.1991) (quoting Legal Aid Soc'y v. Dunlop, 618 F.2d 48, 50 (9th Cir.1980)), its argument from "inadequacy" is unavailing. First and foremost, despite the alleged "stagnation" in the case, ACNFARI cannot--and in the end does not--seriously contend that the representation being provided by the current defendants is inadequate. Second, the prospect of inadequate representation on the part of future defendants in future years is purely speculative, and, in any event, was known to ACNFARI the day the litigation surrounding Proposition 187 commenced.
 
 
 23
 ACNFARI explicitly conceded at oral argument that its "ultimate objective" (i.e., to ensure that Proposition 187 is upheld as constitutional on the merits) is identical to that of the current state defendants in the litigation, Governor Wilson and Attorney General Lungren. Under well-settled precedent in this circuit, "[w]here an applicant for intervention and an existing party 'have the same ultimate objective, a presumption of adequacy of representation arises.' " Northwest Forest Resource, 82 F.3d at 838 (quoting Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality, 775 F.Supp. 353, 359 (D.Or.1991)) (emphasis added).[4] The undisputed facts of this case do not even begin to rebut the presumption of adequacy. On the contrary, they bear it out.
 
 
 24
 ACNFARI relies primarily upon Yniguez v. Arizona, 939 F.2d 727 (9th Cir.1991), vacated sub nom., Arizonans for Official English v. Arizona, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), and Sagebrush Rebellion v. Watt, 713 F.2d 525 (9th Cir.1983), in support of its inadequacy argument. Those cases, however, are clearly distinguishable.[5] This is certainly not a case, as was Yniguez, in which "the government [is] less than enthusiastic about the enforcement of a measure adopted by ballot initiative...." Yniguez, 939 F.2d at 733. In fact, the situations in the two cases could not be more different. In Yniguez, Governor Mofford, the party-defendant, "had publicly opposed the adoption of [the ballot initiative at issue] during the 1988 election [and had] ... announced her decision not to appeal the district court's opinion and order." Id. at 730. In this case, on the other hand, the evidence clearly demonstrates Governor Wilson's forceful, persistent, and proactive support for Proposition 187.
 
 
 25
 The day after Proposition 187 was passed, Wilson issued an executive order directing its immediate implementation. He also filed his own "preemptive strike" suit in January 1995 seeking to have the initiative upheld. See Wilson v. City of San Jose, 111 F.3d 688 (9th Cir.1997). See generally Patrick J. McDonnel, Wilson Suit Seeks to Halt Federal Action on Prop. 187 Until State Courts Rule, L.A. Times, Jan. 28, 1995, at A18 ("Taking the offensive in the intense legal battle surrounding Proposition 187, Gov. Pete Wilson filed suit Friday seeking to keep the federal courts from acting on the measure until state courts interpret the legality of the seeping immigration initiative approved by California voters on Nov. 8."). In fact, because of his outspoken support for Proposition 187, Wilson consistently has been identified as the individual "spearheading" and "trumpeting" the initiative. See, e.g., Tom Rhodes, Californians Split over Law to Cut Aid for Immigrants; US Mid-Term Elections, Times of London, Nov. 8, 1994; Dan Walters, A Full Circle of Odd Stuff, Sacramento Bee, Apr. 20, 1997, at A3.
 
 
 26
 Most importantly, there can be no question that defendants Wilson and Lungren have vigorously defended Proposition 187 in the context of the present lawsuit at every turn. For instance, they opposed plaintiffs' motion for a temporary restraining order. They also challenged plaintiffs' motion for a preliminary injunction, and appealed the district court's order granting that motion. They filed a motion for abstention or, in the alternative, to dismiss for failure to state a claim. They filed detailed answers to each of the eight separate complaints filed in the case. They also contested plaintiffs' motion to certify a class action. They opposed plaintiffs' motions for summary judgment, and filed a motion for reconsideration of the district court's opinion partially granting plaintiffs' motion for summary judgment. Finally, shortly before ACNFARI moved to intervene, Wilson and Lungren filed their own motion for partial summary judgment.
 
 
 27
 In sum, there simply is no reason to believe, as there plainly was in Yniguez, that Wilson and Lungren cannot be "count[ed] on," Yniguez, 939 F.2d at 733, to argue vehemently in favor of the constitutionality of Proposition 187. In fact, their actions suggest precisely the opposite conclusion.
 
 
 28
 For similar reasons, the instant case is of a different kind altogether from Sagebrush Rebellion, in which the court permitted the Audubon Society to intervene on behalf of the defendants, in light of the fact that the party-defendant to the case, Secretary of Interior James Watt, had before his cabinet appointment been the director of the public interest group representing the plaintiffs' interests in the litigation. The court found that under those circumstances--which, it noted only half jokingly, had given rise to the sobriquet for the case "Watt v. Watt" --the applicant's interests were not adequately represented. See Sagebrush Rebellion, 713 F.2d at 528. Here, both Governor Wilson and Attorney General Lungren have ardently defended the constitutionality of Proposition 187 since the onset of this litigation. This case, in short, is certainly no "Wilson v. Wilson."
 
 
 29
 Governor Wilson's and Attorney General Lungren's vigorous defense of Proposition 187--both in court and in the political arena--leave little doubt that the governor and the attorney general are ready, willing, and able to protect ACNFARI's asserted interest in the litigation. In fact, ACNFARI conceded as much at oral argument, when it acknowledged that the current state defendants are "vigorously and professionally" defending the initiative.
 
 
 30
 ACNFARI's bare allegation that the litigation is progressing too slowly cannot overcome the uncontroverted fact that Wilson and Lungren are more than adequately representing ACNFARI's primary interest in seeing Proposition 187 upheld. We agree with the senior assistant attorney general appearing on behalf of the state at oral argument--who represented that his office was neutral with regard to this appeal--that ACNFARI's charge that the state is not moving the litigation along quickly enough "gets into the Attorney General's office justifying its legal tactics." When a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has vested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status. See Northwest Forest Resource, 82 F.3d at 838 (denying applicant's motion of intervention as of right where the only "disagreement [was] minor ... [and] reflect[ed] only a difference in strategy"); Jenkins v. Missouri, 78 F.3d 1270, 1275 (8th Cir.1996) ("A difference of opinion concerning litigation strategy ... does not overcome the presumption of adequate representation."). See generally Wright, Miller & Kane, supra, § 1909, at 344 ("A mere difference concerning the tactics with which litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party....").
 
 
 31
 In the end, ACNFARI cannot seriously contend that defendants Wilson and Lungren are not adequately representing ACNFARI's interests. And because Wilson's and Lungren's representation is adequate, ACNFARI's attempted explanation for its delay--that is, that it decided, after twenty-seven months, to intervene "because its interests may not be adequately represented"--rings hollow.
 
 
 32
 Perhaps recognizing that its frontal assault on the adequacy of the current defendants' representation is problematic, ACNFARI ultimately resorts to the contention that, although Governor Wilson and Attorney General Lungren support Proposition 187 and are themselves "vigorously and professionally" defending the initiative, each is constitutionally precluded from running for his respective office in 1998, and "there is no guarantee that their successors will be equally enthusiastic about defending this initiative." (Appellant's Brief, at 17).[6]
 
 
 33
 ACNFARI's prophesying falters for two reasons. First, the assertion that its interest might, either in 1998 or at some other unspecified time in the future, diverge from the interest of the governor and attorney general is purely speculative, and does not justify intervention as a full-fledged party. See Moosehead San. Dist. v. S.G. Phillips Corp., 610 F.2d 49, 54 (1st Cir.1979) (holding that "a petitioner must produce something more than speculation as to the purported inadequacy" in order to justify intervention as of right under 24(a)(2)); cf. League of United Latin American Citizens v. Clements, 884 F.2d 185, 189 (5th Cir.1989) (concluding that applicant must demonstrate "more than speculation as to the purported inadequacy" in order to warrant permissive intervention under Rule 24(b)) (quoting Moosehead, supra ) (internal quotation marks omitted). More specifically, this court has explicitly declared that "the mere change from one ... administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits." Sagebrush Rebellion, 713 F.2d at 528. As Appellee Gregorio T. argued in its brief, "[i]f the Court were to accept ACNFARI's contention that speculation about the effects of a change of administration were sufficient to meet movant's burden of demonstrating inadequate representation, then proposed intervenors could always satisfy the third prong of Rule 24(a)(2) if the defendant were a[ ] government entity." (Appellee's Brief, at 17).
 
 
 34
 Second, and more importantly, any prospect for a future divergence of interests that exists now also existed when the proposition 187 litigation was initiated in 1994: Pete Wilson was then, as he is now, the governor; Daniel Lungren was then, as he is now, the attorney general; and neither Wilson nor Lungren could then run, as they cannot now, for reelection in 1998.[7] Despite the fact that ACNFARI knew then what it argues now, it failed to move the court for intervention for twenty-seven months. Consequently, because under Rule 24 the timeliness clock begins ticking from the time a proposed intervenor "should have been aware [its] 'interest[s] would no longer be protected adequately by the parties,' " Officers for Justice, 934 F.2d at 1095 (quoting Legal Aid Soc'y v. Dunlop, 618 F.2d 48, 50 (9th Cir.1980)), ACNFARI's motion was properly denied.
 
 B
 
 35
 In light of our conclusion regarding timeliness, we need not, and do not, address the remaining three factors of the intervention-as-of-right standard.
 
 IV
 
 36
 Appellant ACNFARI also appeals the district court's denial of its motion to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b)(2). Assuming we have jurisdiction, we review a district court's denial of permissive intervention pursuant to Rule 24(b) only for abuse of discretion. See Washington, 86 F.3d at 1507.
 
 
 37
 But, courts in this circuit have never squarely held that the denial of a motion to intervene permissively is a "final decision" within the meaning of 28 U.S.C. § 1291; rather, courts "allow[ ] appeal of a denial of permissive intervention [only] if the trial court has abused its discretion." In re Benny, 791 F.2d 712, 720 (9th Cir.1986). That is, in determining its jurisdiction, a reviewing court must--despite the seemingly "cart-before-the-horse" nature of the inquiry--first decide whether the district court abused its discretion in denying the motion. If it finds an abuse of discretion, it retains jurisdiction and must reverse; if it determines, on the other hand, that no abuse of discretion has occurred, it must dismiss the appeal for want of jurisdiction. Consequently, our "jurisdiction to review the denial of [ACNFARI's] motion for permissive intervention exists as a practical matter because a consideration of the jurisdictional issue necessarily involves a consideration of the merits--whether an abuse of discretion occurred." Id. at 720-21.
 
 
 38
 Federal Rule of Civil Procedure 24(b)(2) governs a party's request to intervene by permission of the court. Rule 24(b)(2) provides:
 
 
 39
 Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
 
 
 40
 Fed.R.Civ.P. 24(b)(2).
 
 
 41
 In this circuit, there are three necessary prerequisites for allowing permissive intervention pursuant to Rule 24(a)(2): "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." Northwest Forest Resource, 82 F.3d at 839. As with motions for intervention as of right, "[a] finding of untimeliness defeats a motion for permissive intervention." Washington, 86 F.3d at 1507.
 
 
 42
 In determining timeliness under Rule 24(b)(2), we consider precisely the same three factors--the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay--that we have just considered in determining timeliness under Rule 24(a)(2). See County of Orange, 799 F.2d at 539. In the context of permissive intervention, however, we analyze the timeliness element more strictly than we do with intervention as of right. See United States v. Oregon, 745 F.2d 550, 552 (9th Cir.1984). A fortiori, our previous conclusion that ACNFARI's intervention motion was untimely is controlling.
 
 
 43
 Because we believe that ACNFARI's motion for permissive intervention was untimely, we conclude that the district court did not abuse its discretion in denying that motion pursuant to Rule 24(b)(2). Consequently, under the rule of In re Benny, 791 F.2d at 720-21, we must dismiss that portion of ACNFARI's appeal relating to permissive intervention for want of jurisdiction.
 
 V
 
 44
 Although we affirm the district court's denial of ACNFARI's intervention motion, we do not believe that the arguments raised by ACNFARI were "frivolous, unreasonable, or without foundation," see Independent Federation of Flight Attendants v. Zipes, 491 U.S. 754, 761, 109 S.Ct. 2732, 2737, 105 L.Ed.2d 639 (1989); Sable Communications v. Pacific Tel. & Tel., 890 F.2d 184, 194 n. 20 (9th Cir.1989). Nor do we conclude that ACNFARI's appeal from the district court's denial of its motion was "wholly without merit," see Mission Oaks Mobile Home Park v. City of Hollister, 989 F.2d 359, 362 (9th Cir.1993) (quoting Wilcox v. Commissioner of Internal Revenue, 848 F.2d 1007, 1009 (9th Cir.1988)) (internal quotation marks omitted). Consequently, we deny the requests of Appellees Gregorio T. and League of United Latin American Citizens for attorneys' fees pursuant to 42 U.S.C. § 1988 and Fed.R.App.P. 38.
 
 VI
 
 45
 This appeal simply reveals a case of "too little, too late." ACNFARI slept on its intervention rights for more than two years. When it awoke, it was unable convincingly to explain its delay. The district court was correct to deny its motion.
 
 
 46
 AFFIRMED IN PART AND DISMISSED IN PART.
 
 
 
 [1]
 On November 14, 1997, during the pendency of this appeal, the district court issued a "Memorandum of Law Re: Remaining Issues in Consolidated Cases," in which it held that "substantially all" of the provisions of Proposition 187 are preempted by federal law, and are thus unenforceable. The district court concluded that only sections 2, 3, and 10 of the initiative are valid. The district court's Memorandum addressing the constitutionality of proposition 187 is not yet before us
 For two independent reasons, we do not believe that the district court's decision renders moot ACNFARI's appeal of the district court's earlier denial of its intervention motion. First and foremost, as of the date this opinion was filed, the district court had not yet entered a final judgment in the case. Second, ours is not a case like United States v. Ford, 650 F.2d 1141 (9th Cir.1981), in which the court concluded that a nonparty's appeal from a district court's denial of its motion to intervene was moot because the underlying action was dismissed, and that there was therefore "no longer any action in which [to] intervene." Id. at 1143. Rather, the facts of this case are more akin to those of Purcell v. BankAtlantic Fin. Corp., 85 F.3d 1508 (11th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 178, 136 L.Ed.2d 118 (1996). In Purcell, the court concluded that the intervention-applicant's appeal from the district court's denial of its motion to intervene was not mooted by the district court's entry of judgment in the underlying litigation. The court held that the intervention controversy was still live because, if it were concluded on appeal that the district court had erred in denying the intervention motion, and that the applicant was indeed entitled to intervene in the litigation, then the applicant would have standing to appeal the district court's judgment. See id. at 1511 n. 3. Consequently, in light of the Purcell decision and the fact that there has been no final judgment entered in this case, we conclude that the district court's November 14, 1997 memorandum did not moot ACNFARI's appeal, and we proceed to decide the appeal on the merits.
 
 
 [2]
 Obviously, in light of the district court's recent decision disposing of this case on the merits, see supra page 1301 n. 1, this litigation is no longer "in the pretrial stages." However, because, as a technical matter, we are charged with reviewing the district court's February 12, 1997 order denying ACNFARI's intervention motion, for the purposes of our analysis, we look at the procedural posture of the case as it existed on that date
 
 
 [3]
 ACNFARI offers other explanations for its decision to seek intervention; however, none is particularly helpful or persuasive in explaining its delay in making that decision. For instance, it argues that, as a sponsor and co-author of Proposition 187, it has a vested interest in "assert[ing] the constitutional validity" of the initiative. Its interest in the constitutionality--and hence, the viability--of its own project no one can deny; however, that interest undoubtedly existed at the very outset of the litigation (if not before), yet ACNFARI declined to intervene at that point. ACNFARI also contends (again, correctly) that, as author, it offers a "unique perspective" on the validity of Proposition 187. True as that may be, its perspective was no less "unique" when this litigation commenced more than two years ago
 
 
 [4]
 Other circuits follow similar rules. See, e.g., American Nat'l Bank & Trust v. City of Chicago, 865 F.2d 144, 148 n. 3 (7th Cir.1989) ("[A] presumption of adequacy of representation arises where the proposed intervenors and a party to the suit have the same ultimate objective."); Moosehead San. Dist. v. S.G. Phillips Corp., 610 F.2d 49, 54 (1st Cir.1979) ("Where the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation. To overcome that presumption, petitioner ordinarily must demonstrate adversity of interest, collusion, or nonfeasance.")
 
 
 [5]
 Additionally, we note that the Ninth Circuit's decision in Yniguez v. Arizona was vacated by the Supreme Court, and is thus wholly without precedential authority. See Durning v. Citibank, N.A., 950 F.2d 1419, 1424 n. 2 (9th Cir.1991) ("A decision may be reversed on other grounds, but a decision that has been vacated has no precedential authority whatsoever."); see also O'Connor v. Donaldson, 422 U.S. 563, 577 n. 12, 95 S.Ct. 2486, 2495, 45 L.Ed.2d 396 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect....")
 
 
 [6]
 We note that the term limits provisions of the California Constitution upon which ACNFARI relies, see Cal. Const. art. V, §§ 2, 11, are in constitutional limbo. The appeal from the decision of the three-judge panel invalidating those provisions, Jones v. Bates, 127 F.3d 839 (9th Cir.1997), was recently reheard en banc, and a decision is pending
 
 
 [7]
 That is, if we assume, arguendo, the validity of the term limits provisions of the California Constitution. Obviously, a decision that those provisions were adopted pursuant to an unconstitutional process or are themselves substantively unconstitutional would further undermine ACNFARI's argument to that extent