194 F.3d 1045 (9th Cir. 1999)
 KATURIA E. SMITH; ANGELA ROCK; MICHAEL PYLE, for themselves and all others similarly situated, Plaintiffs-Appellees,
And
UNIVERSITY OF WASHINGTON, Law School; WALLACE D. LOH; SANDRA MADRID; RICHARD KUMMERT; MICHAEL TOWNSEND; ROLAND HJORTH, Defendants-Appellees,
And
ROBERT ARONSON; JOHN JUNKER; JACQUELINE MCMURTRIE; ERIC SCHNAPPER; JANET STEARNS, Defendants,
v.
TYSON MARSH; ROBIN WILT; ADRIANA MAESTAS; BRIDGET LOKELANI SLAVENS; BUFFY JO CHRISTINA WICKS; TROY A. HUTSON; SONIA M. RODRIGUEZ; ELAINE B. GIN; ANDREW LANGHAM; ELIZABETH M. ADAMITIS; PETER MICHAEL MACDONALD; TRACEY J. MARCH; ALICE M. OSTDIEK, Amici Curiae-Appellants.
 No. 98-35732
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted August 10, 1999--Seattle, Washington
Filed November 1, 1999
 
 Mark D. Rosenbaum (argued), Daniel P. Tokaji, ACLU Foundation of Southern California, Los Angeles, California; Steven Shapiro, ACLU Foundation, New York, New York; Lucy Lee Helm, W. Ward Morrison, Jr., Graham & James; RiddellWilliams, Seattle, Washington, for the proposed intervenors-appellants.
 Michael F. Rosman (argued), Hans F. Bader, Center for Individual Rights, Washington, D.C., for the plaintiffs-appellees.
 Appeal from the United States District Court for the Western District of Washington; Thomas S. Zilly, District Judge, Presiding. D.C. No. CV-97-00335-TSZ
 Before: William C. Canby, Jr., Melvin Brunetti, and Diarmuid F. O'Scannlain, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether a motion to intervene as of right in a pending federal affirmative action lawsuit was properly denied as untimely.
 
 
 2
 * The case underlying the motion to intervene challenges the use of affirmative action in admissions at the University of Washington Law School. Katuria Smith, Angela Rock, and Michael Pyle ("Applicants") are unsuccessful white applicants who sued the Law School, former dean Wallace D. Loh, and certain other current and former Law School officials (collectively, "the Law School"), seeking to challenge its admission policies. Tyson Marsh and twelve others ("Students") are prospective and current law students at the University of Washington, including minority students, who claim that their educational opportunities would be diminished if affirmative action were abolished. Students sought to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) as defendants in the underlying affirmative action case. They claim that minority student admissions and enrollment would decline sharply if affirmative action were abolished, injuring them in two ways: (1) by decreasing educational diversity, and (2) by reducing minority applicants' chances of gaining admission to the Law School. The district court denied the motion to intervene, holding that it was untimely because it was made fifteen months after commencement of the Applicants' lawsuit and without adequate explanation for the delay. In addition, the court denied intervention on the ground that Students' interests were adequately represented by the Law School. Denial of the motion to intervene is the only issue raised by the present appeal.
 
 
 3
 To understand the legal issues presented by this appeal, a thorough understanding of the prior proceedings is necessary. The underlying litigation commenced on March 5, 1997, when Applicants filed a complaint in federal district court alleging that the Law School's admissions system discriminated on the basis of race in violation of 42 U.S.C.SS 1981, 1983, and 2000d. The Law School answered on May 30, 1997. Applicants filed a consolidated amended complaint on July 10, 1997, which the Law School answered on August 9, 1997. Later that month, Applicants filed a demand for a jury trial, followed by a motion for class certification; the Law School opposed both motions.
 
 
 4
 In December 1997, various individual Law School officials filed a motion for partial summary judgment on the basis of qualified immunity. In January 1998, the Law School moved for partial summary judgment on the Title VI claims, 42 U.S.C. S 2000d. Applicants filed responses opposing both motions for summary judgment, to which the Law School replied. On March 13, 1998, the district court heard oral argument on the pending motions. In April 1998, the Law School moved to strike Applicants' jury demand, to which Applicants responded and the Law School replied later that month. On April 22, 1998, the district court denied without prejudice the Law School's motion for partial summary judgment on the Title VI claims; granted in part, and denied in part without prejudice, the individual Law School officials' summary judgment motion; granted Applicants' motion to bifurcate the trial; and denied in part, and granted in part,Applicants' motion for certification of a plaintiff class.
 
 
 5
 In addition to the substantive motions outlined above, the district court dealt with various procedural and discoveryrelated matters. On June 11, 1997, three months after filing of the original complaint, the court issued a pretrial order setting a timetable for the litigation. On March 13, 1998, when it heard the summary judgment motions, the district court also held a status conference. Following the status conference, on April 7, 1998, the court issued an amended pretrial order under which expert disclosures were due on August 21, 1998; all discovery was to close by October 16, 1998; and trial was to begin January 19, 1999. This order was in effect when Students sought to intervene.[1]
 
 
 6
 On June 4, 1998, Students moved to intervene as defendants, and the Law School supported their motion. Relying upon (1) the stage of the proceeding at which intervention was sought, (2) the prejudice to other parties, and (3) the reason for and length of delay before intervening, see County of Orange v. Air California, 799 F.2d 535, 537 (9th Cir. 1986), the district court concluded that the motion was untimely because (1) the court had already decided several substantive motions, (2) discovery was well underway, and (3) Students failed to offer an adequate explanation for the lengthy delay of over a year before seeking intervention. The district court concluded further that Students had failed to demonstrate that their interests would be inadequately represented by the existing defendants in light of the fact that they and the Law School had the same ultimate objective: preservation of the Law School's current admissions policy in order to ensure a diverse student body. Accordingly, the district court denied the motion to intervene in an order of July 24, 1998. Students timely filed a notice of appeal, and the present appeal ensued.
 
 
 7
 The Applicants' lawsuit against the Law School has progressed significantly since the denial of the motion to intervene. The district court set further discovery deadlines for late 1998 and early 1999, and the court also dealt with various additional discovery motions.
 
 
 8
 On November 3, 1998, during the pendency of the underlying case, the voters of the State of Washington passed Initiative Measure 200 ("I-200"), which provides that "[t]he State shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting." Shortly thereafter, on November 19, 1998, the Law School moved to dismiss Applicants' claims for injunctive and declaratory relief as moot. Subsequently, the Law School moved for summary judgment, and Applicants moved for partial summary judgment on the issue of liability. On February 10, 1999, the district court granted the Law School's motion to dismiss the injunctive and declaratory claims as moot, thereby dismissing all claims for equitable relief (except for one Applicant's individual claim for an injunction ordering him to be admitted to the Law School)[2]. At the same time, the courtalso decertified the Applicants' plaintiff class. On February 12, 1999, the court issued an order denying both motions for summary judgment, certified its order for appeal, and stayed the trial pending further order.[3]
 
 II
 
 9
 The denial of a motion to intervene as of right constitutes, of course, an appealable "final decision" under 28 U.S.C. S 1291. See League of United Latin American Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir. 1997) ("LULAC"). Although a district court's denial of a motion to intervene as of right pursuant to Rule 24(a)(2) is reviewed de novo, see United States v. Washington, 86 F.3d 1499, 1503 (9th Cir. 1996), a district court's determination of the timeliness of a motion to intervene is reviewed for abuse of discretion. See LULAC, 131 F.3d at 1302; Washington, 86 F.3d at 1503. "An abuse of discretion occurs if the district court bases its decision on an erroneous legal standard or on clearly erroneous findings of fact." Coalition for Economic Equity v. Wilson, 122 F.3d 692, 701 (9th Cir. 1997) (internal quotation marks omitted).
 
 III
 
 10
 Intervenors sought intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2). Rule 24 provides:
 
 
 11
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 12
 Fed. R. Civ. P. 24(a)(2). "[T]he requirements of Rule 24(a)(2) may be broken down into four elements, each of which must be demonstrated in order to provide a non-party with a right to intervene: (1) the application must be timely; (2) the applicant must have a `significantly protectable' interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court." LULAC, 131 F.3d at 1302 (citing Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 836 (9th Cir. 1996)). Here the district court concluded that Students failed to satisfy the requirements oftimeliness and inadequacy of representation.
 
 
 13
 In determining whether a motion for intervention is timely, we consider the following three factors:"(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." LULAC, 131 F.3d at 1302 (quoting County of Orange, 799 F.2d at 537) (internal quotation marks omitted). Students concede that the district court stated the proper three-factor test, but argue that the court misapplied it. To these considerations we now turn.
 
 
 14
 * The first timeliness factor focuses on the stage of the proceeding at which an applicant seeks to intervene. In LULAC, the Alan C. Nelson Foundation of Americans for Responsible Immigration ("ACNFARI") sought to intervene twenty-seven months after the filing of the original challenge to California's Proposition 187. We noted initially that, due to this lengthy delay, the proposed intervenor faced an "uphill battle." LULAC, 131 F.3d at 1302. ACNFARI emphasized that the litigation was in its pretrial stages when it moved to intervene, but we deemed this fact relatively unimportant in light of the following:
 
 
 15
 At the time ACNFARI sought to intervene, a lot of water had already passed underneath Proposition 187's litigation bridge. Obviously, the plaintiffs' complaints had been filed. The district court had issued a temporary restraining order, and subsequently a preliminary injunction, with regard to several sections of the Proposition. The defendants had appealed the district court's issuance of the preliminary injunction to the Ninth Circuit. At a relatively early stage of the litigation, four sets of parties had successfully intervened in the case. The court had provisionally certified a plaintiff class in accordance with Rule 23. The defendants had filed, and the district court had denied, a motion to dismiss. The defendants had filed an answer. The plaintiffs had filed a motion for summary judgment, on which the district court had heard argument, and which it had granted in part and denied in part. And finally, discovery had proceeded for roughly nine months before being suspended in December 1995.
 
 
 16
 Id. at 1303. The LULAC court explained that "the fact that the district court has substantively -and substantially -engaged the issues in this case weighs heavily against allowing intervention as of right under Rule 24(a)(2). " Id.
 
 
 17
 Applying LULAC, the district court here concluded that Students were attempting to intervene at a late stage in the proceedings, after significant discovery had taken place and after many substantive motions had been adjudicated. By June 4, 1998, when Students filed their motion to intervene, the following events had already transpired:
 
 
 18
 1. Applicants had filed their complaint, and the Law School had answered;
 
 
 19
 2. Applicants had filed a consolidated amended complaint, and the Law School had answered;
 
 
 20
 3. Applicants had filed a demand for jury trial, and the Law School had responded;
 
 
 21
 4. Applicants had filed a motion to certify a class, and the Law School had responded;
 
 
 22
 5. various individual Law School officials had filed a motion for partial summary judgment, and Applicants had responded;
 
 
 23
 6. the Law School had filed for partial summary judgment on the Title VI claims, and Applicants had responded;
 
 
 24
 7. the court had heard oral argument on the pending motions;
 
 
 25
 8. the court had established a discovery deadline of October 16, 1998, and a trial date of January 19, 1999; 9. the Law School had filed a motion to strike Applicants' jury demand, and Applicants had responded; and
 
 
 26
 10. the court had ruled on the Law School's motions for summary judgment and partial summary judgment, granted Applicants' motion to bifurcate the trial, and denied in part and granted in part Applicants' motion to certify a class.
 
 
 27
 As the foregoing list of filings and decisions indicates, the district court correctly concluded that the case had progressed substantially by the time Students sought to intervene. In light of LULAC's admonition that substantial engagement by the district court with the issues in a case "weighs heavily against allowing intervention as of right," 131 F.3d at 1303, the court did not abuse its discretion in concluding that this factor counted strongly against granting intervention.
 
 B
 
 28
 As Students correctly observe,"[m]ere lapse of time alone is not determinative" in deciding the timeliness of a motion to intervene. County of Orange, 799 F.2d at 537. The presence or absence of prejudice to other parties in connection with the proposed intervention is a second important factor in the timeliness determination. Here Students argue that their intervention would not prejudice any existing litigants, and they further state that they would not seek to relitigate any issues already resolved by the district court.
 
 
 29
 In LULAC, we rejected ACNFARI's similar claim that its intervention would cause no prejudice because it would not revisit settled issues:
 
 
 30
 [A]s a general rule, intervenors are permitted to litigate fully once admitted to a suit. Consequently, even if ACNFARI does in fact limit itself, as it has promised, to filing motions and conducting discovery regarding future issues, its admission as a party will have the inevitable effect of prolonging the litigation to some degree. We recognize, of course, that additional delay is not alone decisive . . . . However, in a case like this one, in which the proposed interve nor waited twenty-seven months before seeking to interject itself into the case, only to move the court for full-party participation at a time when the litigation was, by all accounts, beginning to wind itself down, we believe that the additional delay caused by the intervenor's presence is indeed relevant to the timeliness calculus, and counsels against granting ACNFARI's motion.
 
 
 31
 131 F.3d at 1304 (citations omitted). As in LULAC, here there was a lengthy delay -fifteen months -before Students attempted to intervene, and many substantive and procedural issues had already been settled by the time of the intervention motion. Thus, under LULAC, the district court properly concluded that allowing intervention would prejudice Applicants.
 
 
 32
 Furthermore, the district court found that Students sought to "inject new issues and matters that are well beyond the scope of [Applicants'] claims and the Law School's defenses," thus expanding the scope of the litigation and causing delay. For example, Students seek to argue that a raceblind admissions system would illegally discriminate against minorities. Whereas the Law School is primarily interested in defending its current admissions system, Students concede that they might well advocate an alternative process. In addition, Students stated their intent to use the present case as a vehicle for challenging the constitutionality of I-200, which would greatly widen the scope of litigation. The district court concluded that introducing these additional issues at such a late stage in the proceedings would cause undue delay. In light of LULAC, the district court's conclusion that intervention would prejudice the parties was a sound one.
 
 C
 
 33
 The third timeliness factor concerns the length of, and explanation for, any delay inseeking intervention. This factor counted strongly against ACNFARI's application for intervention in LULAC: "Even more damaging to ACNFARI's motion than the twenty-seven month delay itself . . . is its failure adequately to explain . . . the reason for its delay." 131 F.3d at 1304. In this case, the district court found that Students offered no adequate explanation for their failure to seek intervention at an earlier point in the proceedings.
 
 
 34
 Our review of the record confirms the district court's conclusion. In their moving papers before Judge Zilly, Students tendered no explanation as to why it took them well over a year to apply for intervention. In their opening brief in this court, they make cryptic references to the district court's alleged failure to consider "the explanation actually provided" for their delay, but never state exactly what explanation they supposedly proffered to the district court. Furthermore, Students offer no citation to the record to support their claim that an explanation for delay was "actually provided" to the court below.
 
 
 35
 Students claim in their opening brief before this court that they "were definitively able to determine that their interests were inadequately represented only after reviewing closely the briefs filed and the [district court's] April 22, 1998 decision on the [Law School's] motion for summary judgment." Such a claim, if true, could constitute a proper explanation for delay. The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties. See LULAC, 131 F.3d at 1304 (citing Officers for Civil Justice v. Civil Serv. Comm'n, 934 F.2d 1092, 1095 (9th Cir. 1991)).
 
 
 36
 The difficulty for Students, however, is that they failed to present this contention to the district court; it first appears in their opening brief on appeal. As a general rule, we will not consider arguments that are raised for the first time on appeal. See, e.g., Sofamor Danek Group, Inc. v. Brown, 124 F.3d 1179, 1186 n.4 (9th Cir. 1997). Furthermore, even Students' opening brief fails to explain what it was in the summary judgment decision that provided them with new information indicating that the Law School would not adequately represent their interests.
 
 
 37
 Only in their reply brief and at oral argument before this court do Students finally offer a fully articulated explanation for their delay. Students now claim that it was only after reading the district court's April 1998 summary judgment decision that they had reason to believe that the Law School would not advance a Title VI-based defense of affirmative action[4] -a potential defense that Students submit they would be willing to make. While this explanation may or may not be persuasive, as an argument raised for the first time in a reply brief, it is not an argument that we may consider here. As already noted, an appellate court will not consider issues not properly raised before the district court. Furthermore, on appeal, arguments not raised by a party in its opening brief are deemed waived. See Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 n.7 (9th Cir. 1999). On the basis of the arguments actually placed before it by the parties, the district court correctly found that Students had offered no adequate explanation for their delay in seeking intervention.[5]
 
 
 38
 In sum, Students moved to intervene as of right fifteen months after commencementof the original litigation, without any satisfactory explanation for their dilatory motion. In reviewing their motion, the district court stated the appropriate legal standard and applied it to the facts in an entirely reasonable manner. Our precedents make clear that the district court did not abuse its discretion in denying the motion to intervene as untimely.
 
 IV
 
 39
 Students also contend that the district court erred in concluding that their interests in the underlying lawsuit were adequately represented by the Law School. In light of our conclusion regarding timeliness, we need not, and do not, reach the remaining elements of the intervention-as-of-right standard under Rule 24(a)(2). See LULAC, 131 F.3d at 1302, 1307; Washington, 86 F.3d at 1503.
 
 V
 
 40
 For the foregoing reasons, we conclude that the district court did not err in denying Appellants' motion to intervene.
 
 
 41
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Applicants state that discovery proceeded throughout 1997, primarily through interrogatories, requests for admissions, and document productions. Students respond that the discovery that had been conducted as of the time they sought to intervene was limited, citing an order of April 22, 1998, in which the court commented that "[o]nly minimal discovery has taken place to date."
 
 
 [2]
 The question has been raised whether the Students' appeal of the denial of their motion to intervene is also moot in light of the dismissal, on mootness grounds, of Applicants' claims for injunctive and declaratory relief. Despite this dismissal, a portion of the underlying case, on the issue of damages, remains pending in the district court. At oral argument, Students expressed their intent to advance their interests through intervention on the damages issue should they prevail on appeal here. We therefore conclude that the present appeal is not moot, and we proceed to decide the merits.
 
 
 [3]
 Applicants filed a timely notice of appeal from the denial of summary judgment on February 23, 1999. On March 9, 1999, the district court heard arguments on whether discovery on the issue of damages should proceed pending appeal on the injunctive and declaratory relief issues. On April 1, 1999, the Ninth Circuit granted Applicants' unopposed petition for permission to appeal pursuant to 28 U.S.C. S 1292(b); Applicants' appeal is pending before this court. Smith v. University of Washington, No. 9935348 (9th Cir. filed Apr. 6, 1999).
 On April 23, 1999, the district court filed an order requiring the completion of discovery on the issue of whether plaintiffs would have been admitted under a "race neutral" system by October 29, 1999, and requiring the identification of lay witnesses by Applicants and the Law School by July 30, 1999, and by August 31, 1999, respectively. Thus, the Applicants' lawsuit continues to move forward in the district court.
 In deciding the timeliness of the motion to intervene, however, we do not consider the advanced state of the underlying litigation. Because we are charged with reviewing the district court's July 24, 1998 order denying the motion to intervene, "for the purposes of our analysis, we look at the procedural posture of the case as it existed on that date." League of United Latin American Citizens v. Wilson, 131 F.3d 1297, 1303 n.2 (9th Cir. 1997).
 
 
 [4]
 The gist of this defense is that eliminating affirmative action would violate the rights of minority students to equal educational opportunity under Title VI of the 1964 Civil Rights Act.
 
 
 [5]
 Students' claims that their Title VI-based timeliness argument was properly raised in the district court, while admirable for their creativity, are unpersuasive and unsupported by the record.
 First, Students point to two references to Title VI in their moving papers and claim that these references "raised" the Title VI argument. Although their moving papers in the district court did in fact refer to Title VI, the references discussed Title VI not in the context of timeliness, but with respect to the somewhat related but nevertheless distinct issue of whether Students had a protectable interest in the litigation at hand.
 Second, Students rely upon a declaration of their counsel, Mark Rosenbaum, that was submitted in support of the motion to intervene. In his declaration, Rosenbaum stated that "after careful review of the papers filed by both parties relating to defendants' motion for summary judgment [he] concluded that the interests of the students [he ] would be representing would not be adequately represented by the existing parties." Students' reliance on this declaration is problematic for several reasons. First, the Rosenbaum declaration was not discussed, elaborated upon, or even referred to in their moving papers. Second, Rosenbaum's conclusory statement fails to explain what it was that he discovered in his review of the summary judgment record that led him to conclude that his clients' interests would be inadequately represented.
 While the Rosenbaum affidavit could arguably provide a bare factual basis for a legal argument regarding timeliness, no such argument was made to the district court. In reviewing the motion to intervene, the district court was under no obligation to take factual claims made by the parties and fashion them into legal arguments. Cf. Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1217 (9th Cir. 1997) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . . .`Judges are not like pigs, hunting for truffles buried in briefs.' ") (citations omitted), cert. denied, 118 S. Ct. 1302 (1998). The district court did not abuse its discretion by failing to consider an argument that was never presented to it.