**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| ZHILIN HAN, | No. 09-72222 |
| Petitioner, | Agency No. A099-728-379 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 10, 2013[**]
Pasadena, California

Before: PREGERSON, WARDLAW, and TALLMAN, Circuit Judges.

Zhilin Han, a native and citizen of China, petitions for review of the Board

of Immigration Appeals' ("BIA") dismissal of his appeal from an Immigration

Judge's ("IJ") denial of his applications for asylum, withholding of removal, and

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]  The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

relief under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition.

In his applications for asylum and withholding of removal, Han claimed that he was subject to past persecution in China because he refused to accede to local government officials' demands for money. Substantial evidence supports the BIA's finding that Han failed to establish the requisite nexus between the harm he suffered or feared and a statutorily protected ground. *See* 8 U.S.C. § 1101(a)(42)(A); *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). Even if the local officials' demands were bribes, rather than lawful tax collection efforts, the record supports the BIA's conclusion that Han refused to pay the bribes because he was unable to, not because he was opposed to corruption. Indeed, Han had willingly paid bribes for five years before he could no longer afford to meet the local officials' increasing demands.

The BIA's rejection of Han's claim that he was a whistleblower of government corruption is also supported by substantial evidence. Han provided no evidence that anyone ever received his letter to the vice mayor of Guilin, that the local officials knew of the letter, or that the local officials intended to persecute Han because of the letter. Even if Han had offered evidence that his letter had been received, the letter's content did not expose or complain of government corruption.

*Cf., e.g., Baghdasaryan v. Holder*, 592 F.3d 1018, 1024 (9th Cir. 2010) (finding a political opinion based on whistleblowing where an applicant filed a complaint with a judge, organized his fellow business owners at a market, and held successful rallies and strikes to publicize and fight a government official's extortion demands). Instead, Han's letter reported only the new governor's "excessive" demands that Han believed were a form of personal retribution. But purely personal retribution is not persecution on account of political opinion. *See Grava v. INS*, 205 F.3d 1177, 1181 n.3 (9th Cir. 2000). Thus, the BIA correctly concluded that any mistreatment Han suffered was not on account of political opinion.

Finally, Han waived any claim for CAT relief by failing to raise it in his opening brief before us. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). Even assuming that Han did not waive his CAT claim, substantial evidence supports the BIA's determination that Han failed to establish eligibility for CAT relief. *See* 8 C.F.R. § 1208.16(c).

**PETITION FOR REVIEW DENIED.**

-3-

*Han v. Holder,* No. 09-72222

PREGERSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that substantial evidence supports the BIA's finding that Han failed to establish a nexus between his persecution and a protected ground. I amicably disagree with the majority when it comes to Han's CAT claim.

The majority asserts that Han waived relief under CAT by failing to raise the issue in his opening brief. But waiver is a discretionary judicial policy. *See Alcaraz v. I.N.S.*, 384 F.3d 1150, 1161 (9th Cir. 2004) ("We will *not ordinarily* consider matters on appeal that are not . . . argued in appellant's opening brief.") (emphasis added) (internal quotation marks omitted). But this is not a hard and fast rule. "Waiver is a creature of judicial policy, informed in this purely federal context by concerns of fairness, finality, and economy." *U.S. v. Doe*, 53 F.3d 1081, 1082 (9th Cir. 1995) (Hall, J.).

Concerns of fairness counsel against applying waiver to Han's CAT claim. The government is not prejudiced by Han's failure to argue the issue in his opening brief because the government was on notice that Han was appealing the CAT issue. Han fully argued his CAT issue before the BIA and the IJ. The government mentioned multiple times in its brief that the CAT issue was on appeal. Resp't's Br. at 1, 4, 14; *see Alcaraz*, 384 F.3d at 1161 (holding that an exception to waiver exists "if the failure to raise the issue properly did not prejudice the defense of the

opposing party") (internal quotation marks omitted).  On the contrary, it is fundamentally unfair to deny Han the opportunity to appeal his CAT claim simply because of his attorney's oversight.  Although the issue was raised by the government and before the IJ and BIA, his attorney mentioned, but failed to argue, Han's otherwise meritorious CAT claim to this court.  Han, moreover, was denied the opportunity to appear and argue before us.  This court required that this matter (like other matters in which the government was a party), be submitted on the briefs because of the lapse in appropriations after the recent October 2013 shutdown of the federal government.  Thus, I would instead hold that Han did not waive his CAT claim.

I further believe that substantial evidence does not support the BIA's determination that Han failed to establish eligibility for CAT relief.  *See* 8 C.F.R. § 1208.16(c).  To obtain relief under CAT, a petitioner must prove that it is more likely than not that he or she will be tortured in the country of removal.  8 C.F.R. § 1208.16(c)(2).  The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 1208.18(a)(1).  "[A]n application for CAT relief need not show that [the Petitioner] will be tortured 'on account of' any particular ground." *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011).  Further, in assessing an

2

applicant's CAT claim, the IJ must consider "all evidence relevant to the possibility of future torture." 8 C.F.R. 208.16(c)(3). This includes, but is not limited to:

> (i) Evidence of past torture inflicted upon the applicant;
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
> (iv) Other relevant information regarding conditions in the country of removal.

*Id.* at (i)-(iv).

The BIA made conclusory findings in rejecting Han's CAT claim without fully considering relevant evidence, including Han's testimony that Mayor Wen and his followers tortured Han at the public security bureau and country reports that highlight the Chinese government's widespread use of physical abuse and extortion. Thus, the BIA's findings cannot stand. *See Cole*, 659 F.3d. at 771-72 (holding that the BIA's decision cannot stand when it fails to mention highly probative or potentially dispositive evidence)*; Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 n.6 (9th Cir. 2010) ("The regulations implementing CAT explicitly require the IJ to consider *all* evidence relevant to the possibility of future torture.") (emphasis added) (internal quotation marks omitted).

Because neither the IJ nor the BIA made an adverse credibility

3

determination, "we must assume that [Han's] factual contentions are true." *Aguilar-Ramos*, 594 F.3d at 704 (internal quotation marks omitted). While the BIA addressed some of the evidence relating to Han's ability to relocate, it missed critical testimony and pertinent country condition reports that are potentially dispositive of his CAT claim.

In denying Han's CAT claim, the BIA primarily relied on Han's testimony that after Han's detention, he lived with his niece in Guangdong. The BIA reasoned that "[t]he ability of the respondent to relocate is an appropriate factor for the Immigration Judge to consider," but the BIA ignored other highly probative and potentially dispositive evidence that Han could not avoid torture by relocating. "[I]t will rarely be safe to remove a potential torture victim on the assumption that torture will be averted simply by relocating [a petitioner] to another part of the country." *Nuru v. Gonzales*, 404 F.3d 1207, 1219 (9th Cir. 2005). Although Han was never detained in Guangdong, there is evidence that the local public security bureau followed Han to Guangdong, which is about 310 miles away from his hometown.

The local Chinese government, moreover, continues to harass Han's wife and daughter, even after they moved several times. Han testified that by seizing Han's house and selling it, the local Chinese government was attempting to lure

4

Han back to China so it could resume its extortion, not simply to satisfy his debt. Importantly, local government officials have publicly announced that, upon Han's return, they will resume their torture: "Once we arrest [Han and his co-owners], we'll torture them to death." When read with the reports detailing widespread corruption and human rights violations in China, this evidence negates the argument that Han can relocate to another part of China where he likely will not be tortured.

The BIA further erred by not addressing other highly probative evidence of Han's past torture and the widespread corruption and human rights violations by the Chinese government. "Past torture is the first factor we consider in evaluating the likelihood of future torture because past conduct frequently tells us much about how . . . a government will behave in the future." *Nuru*, 404 F.3d at 1217. Han testified at length about suffering two days of torture at the public security bureau for not paying bribes: on the first day, the local government officials withheld food and water while Han was in isolation; on the second day, five or six police officers "interrogated" Han by beating him with an electric baton and kicking his head, side, and legs. The BIA did not discuss this highly probative evidence.

The BIA also failed to consider pertinent country condition evidence—in particular, relevant country reports. *See Aguilar-Ramos*, 594 F.3d at 705 n.6

5

("Country reports are accorded special weight in removal proceedings."). Further, failure to consider evidence of country conditions in the record is sufficient reason to grant petitions for review in CAT cases. *See Cole*, 659 F.3d at 771-72 (determining that the BIA need not discuss each piece of evidence submitted, but where the "BIA's decision indicates a failure to consider all the evidence . . . . the decision cannot stand").

In March 2006, the UN Special Rapporteur on Torture reaffirmed that torture remained a widespread problem in China. The 2006 U.S. Department of State's Country Report on China's Human Rights Practices ("Country Report") reported that physical abuse and extortion occurred in detention centers. *Id.* The Country Report also confirmed the frequent problem of local government corruption. Specifically, it noted that "[p]olice officers reportedly coerced victims, took individuals into custody without just cause, arbitrarily collected fees from individuals charged with crimes, and mentally and physically abused victims and perpetrators."[1] This directly parallels Han's testimony that he was taken to the

_____

[1] In discussing the widespread corruption of the Chinese government, the Country Report mentions a case similar to Han's. "In March 2000 [a] foreign citizen . . . was sentenced to 16 years' imprisonment for tax evasion after allegedly refusing to pay bribes to local tax auditors. He remained in prison at year's end, despite receiving a one-year reduction in his sentence . . . ." U.S. Dep't of State, Country Report on Human Rights Practices - 2006: China (includes Tibet, Hong

(continued...)

Yongfu public security bureau, tortured for not paying bribes, and threatened with rape. "Because the BIA failed to consider the Country Report at all, the proper course of action is to remand with instructions that the BIA reconsider [Han's] CAT claim in light of the Country Report." *Aguilar-Ramos*, 594 F.3d at 705.

The BIA abused its discretion because it neither reviewed nor mentioned Han's testimony pertaining to his past torture or the likelihood of future torture, and the potentially dispositive provisions of the Country Report. Accordingly, I would grant Han's petition for review of his CAT claim to allow the BIA to fully consider Han's ability to relocate despite being followed by the Yongfu government for over 300 miles, his past torture by government officials, and pertinent country evidence of widespread torture and corruption in China.

---

[1](...continued)
Kong, and Macau) (2007).