**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LAWRENCE P. KALBERS,
*Plaintiff-Appellee*,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,
*Defendant*,

v.

VOLKSWAGEN AG, Proposed
Intervenor,
*Movant-Appellant*.

No. 20-56316

D.C. No.
2:18-cv-08439-
FMO-PJW

OPINION

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Argued and Submitted October 21, 2021
Pasadena, California

Filed December 28, 2021

Before: Consuelo M. Callahan, John B. Owens, and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Owens

## SUMMARY[*]

**Intervention / Freedom of Information Act**

The panel reversed the district court's order denying, as untimely, Volkswagen AG's motion to intervene in a Freedom of Information Act ("FOIA") lawsuit concerning millions of VW's documents.

Professor Lawrence Kalbers took an academic interest in the VW "Dieselgate" emissions scandal and submitted a FOIA request to the U.S. Department of Justice ("DOJ"). Kalbers sued DOJ under FOIA to obtain undisclosed documents. VW moved to intervene.

The panel considered whether VW's motion to intervene as of right was timely and applied the timeliness factors. Applying the first factor, the length of and reason for delay, the panel held that in a FOIA case delay is measured from the date the proposed intervenor knew or should have known the parties would no longer adequately protect its interests. The government's obligation to comply with FOIA did not transform this fact-specific analysis into a bright-line rule mandating immediate intervention upon learning of the intervention. Here, the district court's ruling to the contrary was an abuse of discretion. The district court used the wrong inquiry when it focused almost exclusively on the date when VW learned of the FOIA lawsuit and on VW's representations concerning this knowledge. The panel held that, properly measured, the delay between when VW should

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

have known that its interests might be inadequately protected by the parties and when VW filed its motion was just a few weeks, and such a short delay weighed in favor of timeliness.

The panel next considered the factor of prejudice to the parties. The panel held that prejudice must be connected in some ways to the timing of the intervention motion, and the fact that adding another party might make resolution more difficult did not constitute prejudice. The district court's prejudice analysis failed to conform to this rule. Applying the proper rule, the panel identified no prejudice stemming from the timing of VW's motion. The lack of prejudice weighed heavily in favor of timeliness.

Addressing the stage of the proceeding, the panel held that the district court failed to explain why a motion to intervene filed at this stage was unreasonably late. This case was in its early stages when VW moved to intervene. To the extent that the age of the case and the formal stage were relevant, both supported a finding of timeliness. The panel therefore concluded that VW's motion to intervene was timely, and the district court abused its discretion when it held otherwise.

The panel next considered the other Fed. R. Civ. P. 24(a) elements for intervention as of right. First, a proposed intervenor must demonstrate a significant protectable interest in the action. VW met this element when it asserted that its interest in the non-disclosure of its documents was protected under Exemption 4 of FOIA, and there was a direct, antagonistic relationship between VW's interest in confidentiality and Kalbers' interest in obtaining the documents at issue. The second element, whether the disposition of the action may impede VW's ability to protect its interest, was met because VW's interest in keeping its

documents confidential would obviously be impaired by an order to disclose. The third element, adequacy of representation, was met where VW argued that it was uniquely well-positioned to explain the commercial significance of the documents at issue.

The panel held that VW met all the requirements to intervene as of right. The panel ordered the district court on remand to grant the Rule 24(a) motion and permit the immediate intervention of VW into these proceedings.

**COUNSEL**

Robert J. Giuffra, Jr. (argued), Sharon L. Nelles, Suhana S. Han, and Andrew J. Finn, Sullivan & Cromwell LLP, New York, New York; Laura Kabler Oswell, Sullivan & Cromwell LLP, Palo Alto, California; for Movant-Appellant.

Daniel Jacobs (argued) and Robert A. Rabbat, Enenstein Pham & Glass, Los Angeles, California, for Plaintiff-Appellee.

**OPINION**

OWENS, Circuit Judge:

Proposed Intervenor-Appellant Volkswagen AG ("VW") appeals from the district court's order denying its motion to intervene in this Freedom of Information Act ("FOIA") lawsuit concerning millions of VW's documents. We reverse and remand.

## I. BACKGROUND

### A. The Emissions Scandal and Investigation

This case has its roots in the so-called "Dieselgate" emissions scandal. Back in 2015, the federal government announced an investigation into VW's "defeat device" software, which enabled certain diesel vehicles to fraudulently pass emissions tests. Through its outside criminal defense counsel, VW met with Department of Justice ("DOJ") prosecutors and provided millions of documents in response to a grand jury subpoena.

VW eventually pled guilty to federal criminal charges. *See* Plea Agreement, *United States v. Volkswagen*, No. 2:16-cr-20394-SFC-APP (E.D. Mich. Mar. 10, 2017), ECF. No. 68. An independent monitor ("Monitor") was appointed to oversee VW's compliance with its plea agreement and to prepare reports for DOJ. *See id.* at 33–35, Ex. 3–1–14. As the plea agreement acknowledged, these reports could contain "proprietary, financial, confidential, and competitive business information." *Id.* at Ex. 3–14.

Not surprisingly, in addition to the criminal case, hundreds of civil lawsuits commenced against VW. These were consolidated in a multi-district litigation in the

Northern District of California. *See* Transfer Order, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:15-md-02672-CRB (N.D. Cal. Dec. 8, 2015), ECF. No. 1.

## B.  Kalbers' FOIA Request and Lawsuit

Professor Lawrence Kalbers, of Loyola Marymount University, took an academic interest in the "Dieselgate" scandal.  To further his research, he submitted a FOIA request to DOJ in June 2018.  He sought, in relevant part:

> (1) A copy of all reports submitted to the Justice Department by the Monitor under the Plea Agreement in *United States v. Volkswagen*, No. 16-CR-20394 (E.D. Mich.) . . . and

> (2) A copy of all "factual evidence" presented by [VW's outside criminal counsel] to the Justice Department as the term in [sic] used on p. 295 of Volkswagen's 2017 Annual Report.

But his request was unsuccessful.  DOJ responded that the documents were "protected from disclosure pursuant to Exemption 7(A) of FOIA, which protects 'records or information compiled for law enforcement purposes' that 'could reasonably be expected to interfere with enforcement proceedings.'"  *See* 5 U.S.C. § 552(b)(7)(A).  Shortly thereafter, on August 22, 2018, DOJ emailed VW's outside civil counsel, notifying them of Kalbers' request and DOJ's response.

On October 1, 2018, Kalbers sued DOJ under FOIA to obtain the undisclosed documents.  Sixteen days later—on

October 17, 2018—DOJ emailed VW's civil counsel a copy of Kalbers' complaint.

For the next eleven months, the case inched forward. DOJ filed its answer; the parties litigated a preliminary discovery dispute, filed a Joint Rule 26(f) Report, and participated in an unsuccessful settlement conference; and the district court stayed the proceedings for a month when government appropriations lapsed. No documents were disclosed.

## C. VW's Motion to Intervene

Things began to change in September 2019. On September 4, DOJ sent a letter to VW's counsel to "formally advise" them about Kalbers' suit, as well as a similar suit filed by the New York Times. The letter cited 28 C.F.R. § 16.7(h), which requires DOJ to notify a "submitter"—anyone who has provided DOJ with confidential commercial information that may fall within FOIA's Exemption 4—of lawsuits seeking that information. *See* 28 C.F.R. § 16.7(a), (h); *see also* 5 U.S.C. § 552(b)(4) (exempting from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential"). DOJ explained, though, that it did "not plan to release any records" and that if its position changed, VW would "be notified and given an opportunity to object to disclosure."

Meanwhile, proceedings before the district court were ramping up. On September 6, the district court ordered the parties to file a joint summary judgment motion by November 7 and any supplemental memoranda by November 22. Then, on September 16, the district court

ordered DOJ to produce a *Vaughn* index.**[1]** In practical terms, this order meant that DOJ could not categorically rely on Exemption 7(A) to justify non-disclosure; it would have to provide a document-by-document index listing and justifying *all* applicable FOIA exemptions, including Exemption 4.

This combination of circumstances—the September 4 letter, the summary judgment schedule, and the *Vaughn* index order—sparked VW's decision to intervene, according to its attorneys.**[2]** Thus, on September 27, VW moved to intervene as a matter of right or, in the alternative, for permissive intervention. *See* Fed. R. Civ. P. 24(a)–(b). In its motion, VW argued that its interests were distinct from DOJ's and that it was "in the best position to effectively explain why its confidential information shared with the DOJ . . . warrants protection from disclosure." However, VW devoted just two paragraphs to the timeliness of its motion, explaining that it "was formally notified of this action" by the September 4 letter. It made no mention of the August 22, 2018 and October 17, 2018 notice emails from DOJ.

Kalbers opposed VW's motion on timeliness grounds. Suspecting that VW had learned of the lawsuit before

---

**[1]** A *Vaughn* index is "a government affidavit identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption." *Aguirre v. U.S. Nuclear Regul. Comm'n*, 11 F.4th 719, 728 (9th Cir. 2021) (internal quotation marks and citation omitted); *see also Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973).

**[2]** VW also asserts that, on September 23, 2019, it learned that DOJ was considering releasing a portion of the Monitor's report, which "further supported [its] decision to move to intervene."

September 4, he asked DOJ to disclose the date when it first notified VW.  In response, DOJ revealed the existence of the August 22, 2018 and October 17, 2018 notice emails.  At Kalbers' insistence, VW filed copies of these emails with the district court—but VW maintained that the emails "in no way suggest[ed] that there was any need for Volkswagen to intervene before it sought to do so on September 27, 2019."

### D.  The District Court's Ruling

Nearly a year passed.  Then, on October 9, 2020, without ever holding oral argument, the district court denied VW's motion to intervene as untimely.

The district court first concluded that the case had "significantly progressed" before VW's motion to intervene, citing the *Vaughn* index order and the unsuccessful settlement conference.  The court then determined that VW's intervention would "raise complicating issues beyond those raised in this relatively straightforward FOIA action," which "would inevitably and unduly delay this action further by requiring a new briefing schedule and time for the court—in the midst of a pandemic and significant judicial shortage—to consider the motion."

The heart of the district court's order, though, concerned the length of and reasons for VW's delay in moving to intervene.  The court emphasized that VW "became aware of this litigation a mere 16 days after it was filed."  It characterized the "formal" September 4 notice letter as "a red-herring that not only strains credulity, but is disingenuous as well."  According to the district court, "VW could never have reasonably believed that its 'unique interests' would be adequately protected by the DOJ at any stage of the proceedings in this case.  In other words, if VW wanted to protect against the disclosure of documents in the

DOJ's possession, it should've sought to intervene as soon as it learned of the lawsuit."

The district court thus denied the motion to intervene as of right as untimely, based on VW's "failure to provide any reasons or otherwise justify its delay," as well as its alleged "misrepresentation of the record." The court also denied permissive intervention on those grounds.

In the same order, the district court also rejected DOJ's motion for summary judgment. Specifically, the court concluded that DOJ's interpretation of Kalbers' request for "factual evidence" was "highly technical and unfair," and it demanded a much broader interpretation. Thus, in the same breath, the district court denied VW's request to intervene and expanded the universe of VW's documents at issue from around 300 to nearly 6 million.

VW timely appealed the district court's order.[3]

---

[3] During the pendency of the appeal and after oral argument, the district court *sua sponte* filed an "Order re Indicative Ruling." The court advised that, on remand, it would deny the motion to intervene as moot because the case below had been consolidated with another case in which VW was a party. We ordered supplemental briefing on the issue of mootness and further ordered the parties to file a joint motion to dismiss if they agreed on the appropriate course of action. The parties (who never previously asserted that the appeal was moot) were unable to agree. We therefore conclude that the issue presented on appeal remains live, and that the district court's "order" announcing its hypothetical future ruling does not deprive us of jurisdiction to review its earlier decision.

## II.  DISCUSSION

### A.  Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291 to review the denial of a motion to intervene as of right. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

"A lower court's denial of a motion to intervene is reviewed *de novo*, except that its timeliness determination is reviewed for abuse of discretion." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016). "A court abuses its discretion if it fails to apply the correct legal rule or standard" or if its "application of that rule was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* at 853–54 (internal quotation marks and citation omitted). We have "repeatedly instructed that 'the requirements for intervention are [to be] broadly interpreted in favor of intervention.'" *Id.* at 853 (alteration in original) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

### B.  Intervention as of Right

Rule 24(a)(2) requires a prospective intervenor to show that: (1) its "motion is 'timely'"; (2) it "has 'a significantly protectable interest relating to . . . the subject of the action'"; (3) it "is 'so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest'"; and (4) its "interest is 'inadequately represented by the parties to the action.'" *Id.* (ellipses in original) (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011)).

### 1. Timeliness

The first element, timeliness, "is the threshold requirement for intervention." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990) [hereinafter *Oregon II*]. Timeliness hinges on "three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *Smith*, 830 F.3d at 854 (quoting *Alisal Water*, 370 F.3d at 921).

We assess each of these factors by reference to the "crucial date" when "proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Id.* (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)); *accord League*, 131 F.3d at 1304; *Legal Aid Soc'y of Alameda Cnty. v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980) (per curiam); *see also Oregon II*, 913 F.2d at 589 ("A party seeking to intervene must act as soon as he 'knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'" (quoting *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989))). Determining this crucial date is necessarily a fact-specific inquiry, as timeliness is "determined by the totality of the circumstances." *Smith*, 830 F.3d at 854.

In analyzing timeliness, we are also mindful of the balance of policies underlying intervention. On the one hand, we "discourage premature intervention" that unnecessarily "squander[s] scarce judicial resources and increase[s] litigation costs." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376–77 (5th Cir. 2001). On the other hand, we favor intervention because it "serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179

(9th Cir. 2011) (en banc) (citation omitted). Accordingly, while we construe the intervention motions that we receive liberally, *id.*, we do not require hasty intervention. *See also John Doe No. 1*, 256 F.3d at 375 ("[T]imeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner." (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994))); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (same); *City of Chicago*, 870 F.2d at 1263 ("The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." (citation omitted)).

With these considerations in mind, we analyze the timeliness factors, taking them in order of importance to this case.

### i.   Length of and Reason for Delay

To decide whether the length of the delay weighs in favor of or against timeliness, we must first determine what constitutes the relevant period of delay. Fortunately, this rule is clear: "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, *not the date it learned of the litigation*." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996) (emphasis added); *accord Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 934 F.2d 1092, 1095 (9th Cir. 1991); *see also Smith*, 830 F.3d at 859 ("[T]he district court erred to the extent it measured the length of Appellants' delay by reference to events pre-dating the time at which Proposed Intervenors were reasonably on notice that their interests were not being adequately represented[.]").

This rule does not disappear in FOIA litigation, as the district court held—it applies with even greater force. FOIA does not mandate that the government turn over all relevant documents immediately upon the submission of a request or the filing of a complaint. Instead, nine exemptions from disclosure (or fourteen, if one counts each subpart of Exemption 7 separately) are embedded into FOIA's statutory text. *See* 5 U.S.C. § 552(b). Upon receiving a FOIA request, the government must determine whether the document falls within an exemption, withhold the qualifying document, and, if necessary, justify its nondisclosure to an examining court. *Cf. Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) (explaining that the government agency bears the burden to justify nondisclosure). In such a case, the interests of the government (compliance with FOIA) and those of a third-party submitter (non-disclosure of confidential commercial information) are aligned by operation of law. *See* 5 U.S.C. § 552(b)(4).

On top of the statutory requirement, a regulatory scheme takes effect when the requested documents might contain a third party's confidential commercial information. *See* 28 C.F.R. § 16.7. Whenever the government receives a FOIA request for such information, it must "promptly provide written notice to a submitter," unless an exception applies. *Id.* § 16.7(c)–(d). Whenever anyone "files a lawsuit seeking to compel the disclosure of confidential commercial information," the government must, once again, "promptly notify the submitter." *Id.* § 16.7(h). And whenever the government is considering voluntary disclosure, it must provide the submitter with "a reasonable time period" in which to provide written objections. *Id.* § 16.7(e)(1). Therefore, if the government's interests begin to diverge

with those of a submitter, the submitter may learn about it from the government itself.[4]

Other courts considering FOIA cases also have recognized the importance of a fact-intensive assessment of the parties' and proposed intervenor's interests. *Dow Jones & Co. v. U.S. Dep't of Just.*, 161 F.R.D. 247 (S.D.N.Y. 1995) (Sotomayor, J.), is particularly persuasive on this issue. There, a third party moved to intervene after the district court granted summary judgment. *Id.* at 250. Opposing intervention, the plaintiffs argued that the third party should have known that her interest could diverge from the government's some eight months earlier, when the government "decided that Exemption 7(A) did not apply." *Id.* at 252. Like the district court in this case, the plaintiffs in *Dow Jones* further asserted that, "in FOIA cases, the government's interest is always different from a private citizen's interest because the government has the duty to disclose information to the public." *Id.* Then-Judge Sotomayor disagreed, finding that the proposed intervenor had a basis for believing the government would protect her interests in litigating the other contested FOIA exemptions. *Id.* at 253. She therefore allowed intervention. *Id.* at 254; *see also 100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 281 (D.D.C. 2014) (acknowledging that the government's interests and those of an intervenor "may indeed overlap at times").

We thus affirm that the general rule for measuring delay applies in a FOIA case: Delay is measured from the date the proposed intervenor knew or should have known that the

---

[4] We do not hold, however, that the presence or absence of notice under 28 C.F.R. § 16.7 will always be dispositive of the timeliness of an application for intervention in a FOIA case.

parties would no longer adequately protect its interests. The government's obligation to comply with FOIA does not transform this fact-specific analysis into a bright-line rule mandating immediate intervention upon learning of the litigation.

Here, the district court's ruling to the contrary was an abuse of discretion. Its order focused almost exclusively on the date when VW learned of Kalbers' lawsuit and on VW's representations concerning this knowledge. But this was the wrong inquiry. *See Washington*, 86 F.3d at 1503 (explaining that delay is not measured from "the date [the proposed intervenor] learned of the litigation"). The district court's reliance on FOIA to conclude that VW should have moved to intervene "as soon as it learned of the lawsuit," turned the applicable rule on its head.[5]

Applying the correct rule to the facts makes clear that VW did not need to intervene before September 2019. Since receiving the complaint, DOJ repeatedly and consistently argued that the requested documents were exempt from disclosure, thereby protecting VW's interests. In so arguing, DOJ relied almost exclusively on Exemption 7(A), a law enforcement exemption. VW would have had no new information to contribute to this argument, and requiring it to intervene anyway would have "squander[ed] scarce judicial resources," *John Doe No. 1*, 256 F.3d at 377. In

---

[5] Based in part on its mistaken view that the date of the initial notice of the litigation controlled, the district court severely criticized VW's counsel for a "misrepresentation of the record" and a "lack of candor" regarding that date. To be clear, VW's motion to intervene should have disclosed the initial 2018 notice and argued for its irrelevance from the get-go. However, the record does not support the district court's overheated accusations of unethical conduct directed towards VW's counsel.

September, though, circumstances changed. The district court's order for the *Vaughn* index revealed that Exemption 4, and not just Exemption 7(A), could be dispositive. VW's knowledge about the confidentiality and commercial nature of its records was now important. VW's subsequent motion to intervene to litigate "the scope and application of Exemption 4 . . . on summary judgment," reflected its realization that DOJ could no longer fully protect its interests.[6]

Properly measured, the delay between when VW should have known that its interests might be inadequately protected by the parties (early- to mid-September 2019) and when VW filed its motion (September 27, 2019) was just a few weeks. We have little trouble concluding that such a short delay weighs in favor of timeliness, rather than against it.

### ii. Prejudice to the Parties

As with our delay analysis, one key principle guides our prejudice analysis: The "only 'prejudice' that is relevant . . . is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Smith*, 830 F.3d at 857. That is, prejudice must be connected in some way to the timing of the intervention motion—and "the fact that including another party in the case might make resolution more 'difficult[ ]'" does not constitute prejudice. *Id.* (alteration in

---

[6] In addition to the *Vaughn* index order and the summary judgment schedule, VW pinned much of its argument on the September 4, 2019 notice letter. We find this argument distinctly unpersuasive, as no new information appears on the face of the letter, and nothing in the record indicates how the letter altered the circumstances.

original) (quoting *United States v. Oregon*, 745 F.2d 550, 552–53 (9th Cir. 1984) [hereinafter *Oregon I*]).

The district court's prejudice analysis failed to conform to this rule. The court focused on the fact that permitting intervention would raise "additional complicating issues" that would "unduly delay this action." Yet every motion to intervene will complicate or delay a case to some degree—three parties are more than two. That is not a sufficient reason to deny intervention. *See Smith*, 830 F.3d at 857; *League*, 131 F.3d at 1304 ("[D]elay is not alone decisive (otherwise *every* intervention motion would be denied out of hand because it carried with it, almost be [sic] definition, the prospect of prolonging the litigation).").

The district court's reliance on the pandemic and a judicial shortage further misses the mark. VW filed its motion to intervene more than five months before COVID-19 changed the world. As for the judicial shortage in the Central District of California, that problem long predates VW's motion.[7] It was wrong for the district court to blame these delays on VW and its counsel.

---

[7] *See, e.g.*, Letter from Virginia A. Phillips, Chief United States District Judge, Central District of California, to Pat Cipollone, White House Counsel, et al. (Oct. 29, 2019), https://src.bna.com/MNg (describing need to fill judicial vacancies in C.D. Cal.); *Report of the Proceedings of the Judicial Conference of the United States* 26-27 (March 12, 2019), https://www.uscourts.gov/sites/default/files/2019-03_proceedings_0.pdf (recommending additional judgeships in C.D. Cal.); *Report of the Proceedings of the Judicial Conference of the United States* 16 (March 14, 2017), https://www.uscourts.gov/sites/default/files/2017-03_0.pdf (same); *Report of the Proceedings of the Judicial Conference of the United States* 18-19 (March 10, 2015), https://www.uscourts.gov/sites/default/files/2015-03.pdf (same).

Applying the proper rule, we have identified no prejudice stemming from the timing of VW's motion. In fact, there need not have been *any* delay from VW's intervention, as VW offered to comply with the existing summary judgment briefing schedule. This lack of prejudice weighs heavily in favor of timeliness. *See Oregon I*, 745 F.2d at 552 (describing prejudice as "the most important consideration in deciding whether a motion for intervention is untimely" (citation omitted)).

### iii. Stage of the Litigation

The "stage of proceeding" factor uses a "nuanced, pragmatic approach" to examine whether "the district court has substantively—and substantially—engaged the issues in [the] case." *League*, 131 F.3d at 1303. In this inquiry, substance prevails over form: Neither the formal "stage" of the litigation (e.g., the "pretrial stage[]"), *id.*, nor the "length of time that has passed since a suit was filed" is dispositive, *Oregon II*, 913 F.2d at 588.

Here, the district court failed to adequately explain why a motion to intervene filed at this stage was unreasonably late. It cited only two prior events—one order and one settlement conference—to demonstrate significant engagement with the case. That analysis stretches both the facts and the law beyond their breaking point.

This case was in its early stages when VW moved to intervene. In stark contrast to *League*, the parties and the district court here had covered scarcely any legal ground together. *Cf.* 131 F.3d at 1303 (finding that the stage of the proceeding "weigh[ed] heavily against allowing intervention" where the case up to that point had involved a temporary restraining order, a preliminary injunction, an appeal, provisional class certification, four prior

interventions, a motion to dismiss, a motion for summary judgment, and nine months of discovery). And what little ground they had covered did not meaningfully advance the case: The two-page minute order for a *Vaughn* index did not substantially examine dispositive issues, and the unsuccessful settlement conference demonstrated only a lack of progress. In other words, far from "derailing a lawsuit within sight of the terminal," *City of Chicago*, 870 F.2d at 1263, VW sought to intervene just as this case began gathering speed.

Further, to the extent that the age of the case and the formal stage of litigation are relevant, *cf., e.g.*, *Alisal Water*, 370 F.3d at 922 (intervention at the remedies stage "merely to attack or thwart a remedy" is disfavored), both support a finding of timeliness. As a survey of our prior cases reveals, we have allowed intervention after much longer delays and, on occasion, all the way into the remedial phase of litigation. *See, e.g.*, *Smith*, 830 F.3d at 848–53 (describing the litigation from its inception in 1993 through the original consent decree in 1996 and the modified consent decree in 2003 to the intervention motion in 2013); *Oregon I*, 745 F.2d at 551–52 (describing the litigation from its inception in 1968 through the adoption of a comprehensive plan in 1977 to the intervention motion in 1983). This is especially true where, as here, "a change of circumstances occurs, and that change is the major reason for the motion to intervene." *Smith*, 830 F.3d at 854 (internal quotation marks omitted); *see also Oregon I*, 745 F.2d at 552 ("[A] change of circumstance, which suggests that the litigation is entering a new stage, indicates that the stage of the proceeding and reason for delay are factors which militate in favor of granting the application [to intervene].").

Therefore, the "stage of the proceeding" factor—like the "delay" and "prejudice" factors—weighs in favor of timeliness.  Given that all three factors favor timeliness (and, conversely, that nothing weighs against a finding of timeliness), we hold that VW's motion to intervene was timely.  When the district court held otherwise, it abused its discretion.

## 2.  Other Rule 24 Requirements

In the ordinary case, we would end our analysis here, as we do not normally reach issues not passed upon by the district court.  But this case is unique.  The requirements for intervention as of right were adequately briefed, here and before the district court.  Kalbers had a wealth of opportunity to respond to all of VW's arguments, yet he chose to focus almost exclusively on timeliness.  (His sole mention of Rule 24's other requirements—that it is "not at all a foregone conclusion" that VW "maintains a legally-protectable interest" in its documents—is both too little and too late.) The merits of VW's motion are clear,[8] and the district court's failure to reach them is immaterial, as we would have reviewed its analysis *de novo*.  *See Smith*, 830 F.3d at 853. Seeing little utility in delaying this case further, we address the remaining requirements for intervention and hold that they are satisfied.

Aside from timeliness, a proposed intervenor must demonstrate three elements: (1) "that the would-be intervenor has a significantly protectable interest relating to

---

[8] Indeed, the district court in the similar *New York Times* case, which involves only a subset of the documents at issue here, took just a day to grant VW's motion to intervene.  *See* Order Granting Mot. Intervene, *The New York Times Co. v. U.S. Dep't of Just.*, No. 1:19-cv-01424-KPF (S.D.N.Y. Sept. 25, 2019), ECF No. 25.

. . . the subject of the action," (2) "that the intervenor is so situated that the disposition of the action may as a practical matter impair or impede [the intervenor's] ability to protect that interest," and (3) "that such interest is inadequately represented by the parties to the action." *Id.* (alterations and ellipses in original) (internal quotation marks and citation omitted).

For the first element, a proposed intervenor "has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (internal quotation marks and citation omitted). Notwithstanding Kalbers' single-sentence argument to the contrary, this element is straightforward. As we have already discussed, VW has asserted that its interest in the non-disclosure of its documents is protected under Exemption 4 of FOIA. *See* 5 U.S.C. § 552(b)(4). And there is a direct, antagonistic relationship between VW's interest in confidentiality and Kalbers' interest in obtaining the documents at issue.

The second element—whether "the disposition of the action may, as a practical matter, impair or impede [VW's] ability to protect its interest," *Alisal Water*, 370 F.3d at 919 (citation omitted)—is even more clear-cut. VW's interest in keeping its documents confidential would obviously be impaired by an order to disclose.

The third element, adequacy of representation, "is satisfied if the applicant shows that representation of his interest *may* be inadequate"—a "minimal" burden. *Dunlop*, 618 F.2d at 50 (emphasis added) (internal quotation marks and citation omitted). Particularly relevant factors here include "whether the present party is capable and willing to

make [the intervenor's] arguments" and "whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (citation omitted). As VW aptly argued to this court and the district court, it is uniquely well-positioned to explain the commercial significance of the documents at issue here. Lacking this information, the existing parties *may* not represent VW's interests adequately. Nothing more is required.

We therefore hold that VW has met all the requirements to intervene as of right. We order the district court on remand to grant the Rule 24(a) motion and permit the immediate intervention of VW into these proceedings.[9]

**REVERSED and REMANDED.**[10]

---

[9] Because we hold that VW is entitled to intervene under Federal Rule of Civil Procedure 24(a), we do not reach the merits of the Rule 24(b) motion.

[10] VW's motion to take judicial notice, Dkt. No. 28, is **GRANTED**.