NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 3 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JAIRO CERVANTES RAMIREZ; et al., | No.    20-56117 |
| Plaintiffs-Appellants, | D.C. Nos.<br>3:17-cv-01230-BAS-AHG<br>3:18-cv-01062-BAS-AHG |
| v. | |
| SHELLY ZIMMERMAN, San Diego Police Chief; et al., | MEMORANDUM* |
| Defendants-Appellees, | |
| and | |
| BOUDREAU, Sheriff's Sergeant; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted October 5, 2021
Pasadena, California

Before:  GRABER and CHRISTEN, Circuit Judges, and SEEBORG,** District
Judge. Partial Concurrence by Judge CHRISTEN.

---

\*    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*    The Honorable Richard Seeborg, Chief United States District Judge
for the Northern District of California, sitting by designation.

Plaintiffs Jairo Cervantes, Nancy Sanchez, Madison Goodman, Brandon Steinberg, and Bryan Pease timely appeal the dismissal of their civil rights action. We affirm.

1. Plaintiffs' theory of liability under Monell v. Department of Social Services, 436 U.S. 658 (1978), is that Chief of Police Shelley Zimmerman, as final policymaker for the San Diego police department, ratified unconstitutional conduct by city police officers. But the record contains no evidence that Chief Zimmerman ratified a subordinate's unconstitutional action. See Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) ("To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." (internal quotation marks omitted)). Nor has Plaintiff ever argued—on summary judgment or on appeal—that Chief Zimmerman knew of a constitutional violation and actually approved of it. See Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004) ("The policymaker must have knowledge of the constitutional violation and actually approve of it."); see also Christie, 176 F.3d at 1239. ("[A] plaintiff must establish that there is a genuine issue of material fact regarding whether a ratification occurred."). Plaintiffs' Monell claim fails on that ground. See Isabel v. Reagan, 987 F.3d 1220, 1226 (9th Cir. 2021) ("We may affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning we adopt." (quoting Atel

2

Fin. Corp. v. Quaker Coal Co., 321 F.3d 924, 926 (9th Cir. 2003) (per curiam))).

2. Plaintiffs' constitutional claims against the individual officers also fail because qualified immunity shields the officers.

Plaintiffs forfeited their Fourth Amendment qualified immunity arguments because the opening brief makes no <u>legal</u> argument that qualified immunity does not apply, nor is such an argument apparent from Plaintiffs' <u>factual</u> recitation. <u>See</u> <u>United States v. Graf</u>, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived.").

Qualified immunity also shields the officer Defendants from any theories under the First Amendment because Plaintiffs have not cited, nor have we found, any clearly established law that is on point. <u>See</u> <u>Sharp v. County of Orange</u>, 871 F.3d 901, 909 (9th Cir. 2017) (holding that qualified immunity shields officer Defendants from claims arising out of their police work unless their conduct violated "clearly established" federal law).

3. In a footnote in its summary judgment order, the district court refused to address viewpoint discrimination at summary judgment because a prior order had denied Plaintiffs leave to amend their complaint to add a claim for viewpoint discrimination. Plaintiffs do <u>not</u> challenge that denial of leave to amend. Instead, Plaintiffs argue only that the district court improperly discarded strong evidence of

viewpoint discrimination. But the operative complaint (the Fourth Amended Complaint) nowhere articulated, nor so much as referenced, a viewpoint discrimination theory. See Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) (holding that "summary judgment is not a procedural second chance to flesh out inadequate pleadings" (internal quotation marks omitted)).

Plaintiffs argue that viewpoint discrimination may be part of a claim under the Ralph Civil Rights Act, Cal. Civ. Code § 51.7, a claim alleged in the operative complaint. But the district court held that the claim under the Ralph Act failed because Plaintiffs had submitted no evidence that some "physical, destructive act" beyond the "mere application of physical force" had occurred. Because Plaintiffs do not challenge that conclusion on appeal, the Ralph Act claim cannot be revived.

4. The district court dismissed other state-law claims as well, but the opening brief does not address those claims. Further, at oral argument, Plaintiffs' counsel clarified that Plaintiffs appeal the dismissal of their claims under § 1983 that allege a violation of the First Amendment and a violation of the Fourth Amendment. Therefore, any arguments related to the other dismissed claims are either waived or forfeited. See Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) (holding that arguments not raised in a party's opening brief generally are forfeited).

4

5. The district court did not abuse its discretion in denying leave to amend to add three police officers as defendants. The district court denied leave to amend on the grounds that Plaintiffs so moved after discovery closed and that Plaintiffs should have been aware of those officers' roles as far back as April 2018, when Defendants listed the role assigned to each officer for the events of May 27, 2016. See United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1172 (9th Cir. 2016) (This court "review[s] the denial of leave to amend for an abuse of discretion.").

6. The district court did not abuse its discretion in denying Plaintiff Pease additional discovery after the cases were consolidated. Although the material sought is relevant, Plaintiffs make no attempt to show how their case would be aided by reopening discovery. See Dichter-Mad Fam. Partners, LLP v. United States, 709 F.3d 749, 751 (9th Cir. 2013) (per curiam) (holding that "broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant" (internal quotation marks omitted)).

7. Plaintiffs did not preserve their argument that the district court erred by not exercising its discretionary power under Federal Rule of Civil Procedure 37 to sanction Defendants. See Graf, 610 F.3d at 1166 ("Arguments made in passing

and not supported by citations to the record or to case authority are generally deemed waived.").

8. Because Plaintiffs settled with the county defendants, any arguments related to the Sheriff's Department are moot.

**AFFIRMED.**

*Cervantes Ramirez v. Zimmerman*, No. 20-56117
CHRISTEN, Circuit Judge, concurring in part and concurring in the judgment.

I concur with my colleagues' decision to affirm the district court's rulings concerning plaintiffs' *Monell* claims, its decision not to consider viewpoint discrimination at summary judgment, dismissal of plaintiffs' state-law claims, denial of leave to amend, denial of additional discovery after the cases were consolidated, denial of sanctions, and that arguments related to the Sheriff's Department are moot. I write separately because I conclude that issues of fact should have prevented entry of summary judgment on whether plaintiffs suffered First and Fourth Amendment injuries.

The district court concluded that plaintiffs had no First Amendment right to remain in the area of an unlawful assembly order and that no reasonable jury could find that defendants lacked probable cause to arrest plaintiffs because plaintiffs failed to disperse. I disagree. Viewing the facts in the light most favorable to the plaintiffs, questions of fact remain regarding whether plaintiffs had departed from the area of the unlawful assembly and were complying with the order to disperse when they were arrested.

The operative dispersal order was issued at approximately 4:30 p.m. pursuant to California Penal Code § 726. Subsequent announcements directed plaintiffs to walk away from Tin Fish Plaza, "toward L Street east," and then onto

Harbor Drive. The record includes evidence showing the defendants' aim was to keep two—or possibly three—factions apart to avoid violence, and that this was the reason plaintiffs were not allowed to circle back on the side streets to their parked cars. I do not question the legitimacy of the law enforcement objective to steer the groups in opposite directions, but the record before us shows that officers told plaintiffs to proceed down Harbor Drive, and only Harbor Drive, but never told them how far they were required to go. Plaintiffs contend they walked along Harbor Drive and away from the plaza as directed. The record shows that one plaintiff testified, "Well, they just kept saying 'keep walking,' which we were. We didn't stand still at any point." And another testified, "They said to keep on going the way they were telling us . . . [and] I followed directions . . . [I k]ept on going forward." Perhaps the best evidence that plaintiffs complied with the order to disperse is the uncontested location and time of their arrests: approximately a mile down Harbor Drive and over two hours after the 4:30 p.m. dispersal order.

Public demonstrations are an important feature of our political landscape and gatherings of this sort are certain to continue. In my view, a dispersal order specifying a point at which officers could allow people to deviate from the trek down Harbor Drive would have avoided considerable confusion for everyone—including the officers on the ground—and may have avoided these

arrests and follow-on litigation. Instead, the open-ended dispersal order exposed defendants to allegations that they committed constitutional violations by arresting people who had departed from the area in compliance with the order to disperse.

That said, in my view the district court correctly concluded that qualified immunity shields defendants from liability for these claims. Plaintiffs articulated an intent to appeal the district court's qualified immunity ruling but offered only general rules of law and the assertion that defendants' conduct "was clearly illegal and unconstitutional." Plaintiffs are correct that, "in an obvious case," we may find clearly established standards "even without a body of relevant case law," *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004), but the facts in this case do not approach that standard, *see, e.g.*, *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020). It was plaintiffs' burden to show clearly established law put defendants on notice their actions violated plaintiffs' rights, and plaintiffs did not meet this burden. For these reasons, I agree with my colleagues' decision to affirm the district court's ruling on qualified immunity.